UNION GAS & ELECTRIC CO. *v.* WALDSMITH.

(Decided January 16, 1929.)

Mr. *Joseph Heintzman,* for plaintiff in error.
Mr. *W. W. Symmes,* Mr. *Nicholas Klein,* and Mr.
*Wm. C. Busch,* for defendant in error.

ALLREAD, J.   Henry Waldsmith brought suit in the court below to recover damages for injuries received as a pedestrian on the sidewalk coming in contact with a broken wire, charged with a high voltage of electricity.

In his petition he charges:

"Plaintiff says that the defendant corporation, disregarding its duties in the premises, negligently and carelessly allowed and permitted its wires and equipment, located as above described, to become weak and defective, and unable to bear its weight and burden and properly to perform its task, and likely to give, snap, break and fall down without warning, and without guard or protection about the same, and a menace and danger to persons lawfully upon the streets, sidewalks and public highways in

the vicinity of said poles, equipment and wires."

Plaintiff then alleges that the wire fell upon the sidewalk, and that he, as a pedestrian, without any warning of any kind, and without cause or fault on his part, walked into the said wire, and was thereby injured.

The defendant, for answer to the amended petition, interposed four defenses: First, a general denial; second, that the poles were erected in accordance with an ordinance of the city of Cincinnati, and subject to a continuous system of inspection, and were maintained in a proper and safe condition under all ordinary purposes and uses; third, *vis major,* or act of God, to wit, the result of a violent, unusual, and unprecedented glaze storm, attended by ice and sleet, which accumulated on defendant's wires, etc., which the defendant, with the greatest care and prudence, could not guard against or anticipate, of which foreign contact with said wires defendant had no knowledge until the same were burned in two and fell to the ground. The fourth charges contributory negligence.

A reply was filed completing the issues. The case was submitted to a jury, and a verdict for $15,000 damages was returned. This verdict was set aside on account of perjured testimony offered on behalf of the plaintiff at the trial.

The case came on to be heard on a second trial, and resulted in a verdict in favor of the plaintiff for $25,000. This verdict and the judgment thereon are under review.

The first question presented was as to the doctrine of *res ipsa loquitur.* The doctrine of *res ipsa loquitur* was recognized by the court in the trial, and

was the subject of two special charges given before the argument and was also embodied in the general charge.

The doctrine of *res ipsa loquitur* has been recognized in Ohio, and is thus stated in the case of *St. Marys Gas Co.* v. *Brodbeck, Admr.,* 114 Ohio St., 423, at page 433, 151 N. E., 323, 326:

"All that the rule of *res ipsa loquitur* means is that the circumstances involved in or connected with an accident may be of such unusual character as to justify, in the absence of any other evidence bearing upon the subject, the inference that the accident was due to the negligence of the one having the possession or control of the article or thing which caused the injury, because in the absence of explanation, this is the only fair and reasonable conclusion." *Citizens' Electric Ry. Co.* v. *Bell,* 5 C. C. (N. S.), 321, 16 C. D., 691, affirmed by the Supreme Court, 70 Ohio St., 482, 72 N. E., 1155; *Cincinnati Traction Co.* v. *Holzenkamp,* 74 Ohio St., 379, 78 N. E., 529, 6 L. R. A. (N. S.), 800, 113 Am. St. Rep., 980; *Glowacki* v. *North Western Ohio Ry. & Power Co.,* 116 Ohio St., 451, 463, 157 N. E., 21, 53 A. L. R., 1486; *Loomis* v. *Toledo Railways & Light Co.,* 107 Ohio St., 161, 140 N. E., 639.

In 20 Ruling Case Law, 187, the rule is stated as follows:

"More precisely the doctrine of *res ipsa loquitur* asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evi-

dence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care.''

The plaintiff's evidence shows that the wire in question was in the exclusive management and control of the defendant electric company at the time of the injury to the plaintiff; that the circumstance of the breaking and fall of the wire is of such unusual character that the fact of injury justifies an inference of negligence against the company in possession, whose duty it was to keep the wire in repair.

It is further objected in the present case that the plaintiff below did not rely upon the doctrine of *res ipsa loquitur,* but alleged in his petition negligence of the company in the maintenance of its overhead wires, and also that he attempted to prove such negligence on the trial. This, it is claimed, is a waiver of the doctrine.

In the present case, however, the plaintiff, Waldsmith, evidently did not know that the doctrine of *res ipsa loquitur* would apply, and he took the precaution of offering the evidence at hand tending to prove the company's negligence in the maintenance of its wires.

Upon this question, there is a conflict of evidence in the decisions of other states. We think, however, the majority of adjudications in other states, and the better rule, as we deem it, are to the effect that the plaintiff, by alleging negligence of the company in the maintenance of its wires, and by an effort to prove the same on the trial, does not waive the doctrine of *res ipsa loquitur.* This is the broader and more liberal rule. It prevents plaintiff, in a case where the doctrine of *res ipsa loquitur* would

ordinarily apply, from being compelled, at his peril, to adopt one or the other view of his case.

We think that the case from the Supreme Court of Washington, *Walters* v. *Seattle, Renton & So. Ry. Co.*, 48 Wash., 233, 93 P., 419, 24 L. R. A. (N. S.), 788, properly states the liberal rule of procedure.

In the case of *Cleveland Ry. Co.* v. *Sutherland*, 115 Ohio St., 262, 264, 152 N. E., 726, 727, a quotation is made from 29 Cyc., 624:

"The maxim *res ipsa loquitur* relates merely to negligence *prima facie* and is available without excluding all other possibilities, but it does not apply where there is direct evidence as to the cause, or where the facts are such that an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as that it was due to his negligence."

This, as well as the language of the court in the cases of *Loomis* v. *Railways Co., supra,* and *Glowacki* v. *Railway Co., supra,* would justify the rule calling for the application of the doctrine of *res ipsa loquitur.* In the *Sutherland case,* however, the doctrine of *res ipsa loquitur* was rejected because the circumstances of the accident tended to prove that the broken glass was caused by the action of the crowd of people and not by an agent of the railway company.

In the case of *St. Marys Gas Co.* v. *Brodbeck, supra,* it appears that the gas company did not have exclusive possession of the thing which caused the injury; hence the doctrine did not apply.

In the case of *Loomis* v. *Toledo Railways & Light Co., supra,* it was held that the *vis major,* when proven, is to be held as a cause of the falling of the

wires equally with the negligence of the defendant, and the doctrine of *res ipsa loquitur* must be discarded. The syllabus is as follows:

"But where the proof raises a probability that such falling poles and wires were caused by a *vis major,* the presumption of negligence does not arise. In such case the plaintiff must sustain his specific allegations of negligence by a preponderance of the evidence."

We are of opinion that the doctrine of *res ipsa loquitur* was proper in the case at bar, and was correctly recognized by the trial court in the rulings upon the demurrer to the evidence, in the first charge given before argument, and in the general charge.

The trial court gave special charge No. 2 before argument as follows:

"If you find that the defendant, an electric company, was permitted to use the streets for its own purposes, then I charge you that it was required to exercise a high, if not the highest, degree of care in the operation, construction, inspection and repair of its wires and poles, to the end that travelers along the highway would not be injured by its appliances, and, if a wire, charged with a deadly current of electricity, fell from its proper place of elevation above the street to the surface of the street, and if you further find that the plaintiff, Waldsmith, was lawfully passing along the highway and was injured by contact with its electric current in that manner, the law raises a prima facie case of negligence."

This special charge was a compound sentence, and therefore the entire charge must be construed

together. It is not proper to take the first part of the charge separately from the second part. The statement of fact contained in the second part of the charge, to wit, that a wire charged with a deadly current of electricity fell from its proper place, must be considered as a basis for the statement of law contained in the charge. While the rule of ordinary care would apply to the duty of the defendant under ordinary circumstances, yet, when the facts are such as to justify a higher degree of care, such high degree of care must necessarily be applied.

The rule stated in the special charge above referred to is taken in a substantial way from the charge contained in the case of *Citizens' Electric Ry., L. & P. Co.* v. *Bell*, 5 C. C. (N. S.), 321, 16 C. D., 691, and we think there is no prejudicial error in the giving of that charge.

In considering the defenses, the second and fourth defenses may be disposed of by the statement that the care imposed by the ordinance is not conclusive in a suit brought by a pedestrian for damages; it is only the measure of care which the city has seen fit to impose upon the defendant. The fact that the defendant did not actually have knowledge of the condition of the wires is not binding, but may be considered in connection with the general denial as to the duty of the electric company.

The principal defenses arise upon the general denial, the answer of the defendant as to the *vis major,* and the plea of contributory negligence.

The evidence upon this plea shows that the wire must have fallen between the hours of 5 and 6 p. m., on the evening of December 25, 1926, and that at the

time the wire fell there was no such sleet storm as to justify one in attributing the accident to an act of God. The storm later in the evening rose to the magnitude of a great storm, and might have then constituted an act of God. At the time the wire fell, there was no *vis major* to rebut the inference in favor of the doctrine of *res ipsa loquitur,* or to amount to a defense. There was no error of the court in respect thereto, or upon the question of the weight of the evidence. Upon that issue the verdict must stand.

The plea of contributory negligence, set forth in the fifth defense, presents a question based upon the conflict of evidence. Waldsmith himself testifies that he did not see the flashings from the wire. Some other testimony was offered to the effect that the electric flashings were largely, if not wholly, discontinued a short time before Waldsmith approached the place where he received his injury.

William Mackzum, a witness produced by the plaintiff, and who stood across the square from the accident, stated that he was able to see the wire because of the flashes caused by the free end of the wire coming in contact with the water on the street. Mackzum says that, when he saw that flash, he did not see Waldsmith, but that the accident happened a couple of seconds afterwards. Mackzum, in many respects, corroborates the testimony of the plaintiff.

Quite a number of witnesses were produced by the defendant tending to prove that the wire flashed at a time when Waldsmith must have been near enough thereto to have seen it. The evidence was not sufficient to have required Waldsmith, as a matter of law, to observe the flashings of the wire, nor was he

in a position where, as a matter of ordinary care, he should have looked, or be charged with seeing the wire.

This case is unlike that of an approaching engine, which moves across the surface of a street, and naturally calls upon the pedestrian for a degree of care commensurate therewith. Here, Waldsmith, according to his testimony, knew nothing of the breaking of this wire or of its location on the sidewalk. He was not bound to pursue diligence in the discovery thereof. Whatever he did see, or could, by the use of ordinary care, have seen, he is charged with knowing.

We therefore reach the conclusion that there was no error of the court in respect to this defense, and the case was one for the jury to consider.

Counsel for plaintiff in error complains that the trial court made certain remarks during the introduction of the testimony of the plaintiff below, which tended to prejudice the plaintiff in error. These remarks are:

"By the Court: Has the average man got a tendon on his foot that he can just as well do without?"

"By the Court: You cannot buy them down here at the Ten Cent Store."

There were no objections or exceptions taken to either of these remarks, nor is there anything in the motion for a new trial to raise the question.

We have considered the remarks, and we do not find that the same are prejudicial to the plaintiff in error.

The remarks of the court were during the examination in chief of the doctor, and, if they tended to discredit either party, they would naturally discredit

the one for whom the testimony was being given, to wit, defendant in error.

We next come to the question of the weight of the evidence. Upon the first trial there was a verdict of $15,000. This verdict was set aside and a new trial ordered. Upon the second trial a verdict was returned for $25,000.

Plaintiff claims that before the injury he was receiving from twenty-five to forty-five dollars per week. Since the injury, he had no employment whatever for quite a time, but finally was able to secure employment as a messenger, and in holiday times he received employment in the Mitchell factory, where the compensation allowed was $50 per week.

So far as the permanent injuries are concerned, the testimony shows that the plaintiff below, Waldsmith, was injured on his head, which has fortunately been repaired by a skillful case of skingrafting. Outside of the looks, that injury would not be of any considerable importance as a permanent injury. The principal permanent damage relates to the defendant's nervousness, and also to the loss of two fingers on the left hand.

We are of opinion that these injuries can be minimized by future employment. The testimony leads us to the opinion that the present verdict is excessive in the sum of $5,000. If the amount of $5,000 is remitted, the judgment below, as so modified, to wit, the sum of $20,000, with interest, will be permitted to stand. If not, the judgment will be reversed because of the excessive verdict.

*Judgment accordingly.*

KUNKLE and MAUCK, JJ., concur.

Judges KUNKLE and ALLREAD, of the Second Appellate District, and Judge MAUCK, of the Fourth Appellate District, sitting in place of Judges HAMILTON, CUSHING and ROSS, of the First Appellate District.