DeHart, Appellant, *v.*
Aetna Life Insurance Co., Appellee.

[Cite as DeHart v. Aetna Life Ins. Co. (1982),
69 Ohio St. 2d 189.]

(No. 81-354—Decided February 10, 1982.)

*Mr. Stanley G. Webster, Mr. Stephen Webster* and *Mr. Robert Merkle,* for appellant.

*Mr. David I. Hammond,* for appellee.

CELEBREZZE, C. J. The critical considerations in this case are whether the Court of Appeals: (1) properly dismissed appellant's case, *sua sponte,* for failure to comply with Local Rule 4(E) of the Eighth Appellate District, (2) abused its discretion in overruling appellant's motion for reconsideration and leave to file an amended praecipe, and (3) erroneously failed to discern the requisite "good cause"[3] for reinstating appellant's case.

As we ruled in *Vorisek v. North Randall* (1980), 64 Ohio St. 2d 62,[4] each district Court of Appeals has the power, pur-

---

[3] Local Rule 13 of the Eighth Appellate District provides, in pertinent part:

"(C) Appeals that have been automatically dismissed for failure of the appellant to timely file a motion for extension of time, and/or the failure of the appellant to timely file the record, and/or assignments of error and brief, or for failure to comply with Local Rule 22 or Local Rule 23, will be reinstated only for good cause shown."

[4] The case at bar is readily distinguishable, in a variety of ways, from *Vorisek v. North Randall, supra.* In *Vorisek,* counsel failed to file, pursuant to then Local Rule 22, a civil appeal statement, the cornerstone of the pre-argument settlement conference. As the court noted in *Vorisek,* the civil appeal statement was an innovative administrative tool designed to streamline the management of the Court of Appeals' docket. Accordingly, we ruled in *Vorisek* that the violation of Local Rule 22 was serious enough to justify a *sua sponte* dismissal by the Court of Appeals.

On the other hand, however, the error in the case *sub judice* was a minor, technical, correctable, inadvertent mistake, far too innocuous to justify an outright dismissal. Indeed, appellant's counsel's mistake was, in a sense, a passive, harmless er-

suant to Section 5, Article IV of the Ohio Constitution,[5] to adopt reasonable, supplementary rules of local practice, which are not inconsistent with the Appellate Rules promulgated by this court. Clearly, each Court of Appeals is in a much better position than we are to decide how, in light of its internal organization and docket considerations, it may best proceed to expedite the orderly flow of its business.

Our fellow judges on the Eighth District Court of Appeals have adopted a comprehensive, automated system of local rules which, on the whole, enables that court to get right to the focal point of each case and expedite the orderly flow of its business, thus vindicating the public's interest in the prompt and efficient dispatch of justice. See, generally, *State* v. *Widner* (1981), 68 Ohio St. 2d 188; *State* v. *Unger* (1981), 67 Ohio St. 2d 65, 67.

As Local Rule 4(E) unambiguously provides:

"Unless appellant indicates in the praecipe that no part of the transcript of proceedings is to be included in the record, failure of appellant to cause to be filed * * * a transcript of proceedings * * * shall be deemed grounds for dismissal of the appeal."

In the case at bar, appellant's counsel mistakenly marked that part of the praecipe which signaled the Court of Appeals that a transcript of proceedings would be forthcoming. The failure of the Court of Appeals to receive a transcript of proceedings necessarily triggered the automatic dismissal mechanism of Local Rule 4(E).

Assuming, *arguendo*, that, due to the mechanics and design of the Court of Appeals' comprehensive, automated local rule system, the case had to be and was properly dismissed, we conclude nonetheless, for the reasons that follow, that (1) the Court of Appeals abused its discretion in overrul-

---

ror because the transcript which counsel indicated was forthcoming never existed in the first place. Thus, as a practical matter, the Court of Appeals had before it the entire record at the time the case was dismissed.

[5] Section 5(B), Article IV of the Ohio Constitution, in part, provides:

"Courts may adopt additional rules concerning local practice in their respective courts which are not inconsistent with the rules promulgated by the supreme court. The supreme court may make rules to require uniform record keeping for all courts of the state, and shall make rules governing the admission to the practice of law and discipline of persons so admitted."

ing appellant's motion for reconsideration and leave to file an amended praecipe and (2) good cause existed, pursuant to Local Rule 13, for reinstating the case.

Initially, in evaluating the propriety of the Court of Appeals' action, we hasten to emphasize—indeed re-emphasize—that it is a fundamental tenet of judicial review in Ohio that courts should decide cases on the merits. See, *e.g., Cobb* v. *Cobb* (1980), 62 Ohio St. 2d 124. Judicial discretion must be carefully—and cautiously—exercised before this court will uphold an outright dismissal of a case on purely procedural grounds.

"Judicial discretion" was defined by this court as: " * * * the option which a judge may exercise between the doing and not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the particular circumstances of the case." *Krupp* v. *Poor* (1970), 24 Ohio St. 2d 123, paragraph two of the syllabus.

The particular circumstances of the case *sub judice* include: (1) appellant's counsel's mistake was inadvertent, correctable and made in good faith, not as part of a continuing course of conduct for the purpose of delay, (2) appellee suffered no prejudice from this error, (3) the Court of Appeals suffered no prejudice from this error since the entire record was before the court at the time the case was dismissed, (4) the sanction of dismissal for a hyper-technical, clerical error is disproportionately harsh in view of the nature of the mistake, and (5) appellant should not be punished for a highly technical error of his counsel.

Applying the foregoing principles to these facts, we find that: (1) the Court of Appeals abused its discretion in overruling appellant's motion for reconsideration and for leave to file an amended praecipe (with the check mark in the appropriate box); and (2) appellant demonstrated "good cause," pursuant to Local Rule 13, for reinstatement of the case.

A case like this compels us to make one final observation. As previously indicated, local appellate rules are needed in order to achieve the prompt and efficient dispatch of justice. This is a two-pronged objective—the local rules must en-

courage promptness and efficiency, on the one hand, and fairness and justice on the other. Fairness and justice are best served when a court disposes of a case on the merits. Only a flagrant, substantial disregard for the court rules can justify a dismissal on procedural grounds. Local rules, at any level of our state court system, should not be used as a judicial mine field, with disaster lurking at every step along the way.

Since appellant's counsel's error was a minor, technical, correctable, inadvertent oversight, we find no conceivable justification for a disposition, by the Court of Appeals, other than on the merits.

For all of the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

KRUPANSKY, J., dissenting. The majority finds: "(1) the Court of Appeals abused its discretion in overruling appellant's motion for reconsideration and for leave to file an amended praecipe * * * ; and (2) appellant demonstrated 'good cause,' pursuant to Local Rule 13, for reinstatement of the case." I do not agree and must, therefore, respectfully dissent.

Eighth District Local Rule 4(E) provides in pertinent part: "Unless appellant indicates in the praecipe that no part of the transcript of proceedings is to be included in the record, failure of appellant to cause to be filed * * * a transcript of proceedings (either complete or partial) * * * *shall be deemed grounds for* dismissal of the appeal." (Emphasis added.)

The appellant in the instant action indicated on his praecipe that a complete transcript would be included in the record for his appeal. When the complete record as ordered in the praecipe was not filed within the 40 days prescribed by App. R. 10(A), the Court of Appeals dismissed appellant's appeal *sua sponte* in accordance with Local Rule 4(E).

A party whose appeal has been dismissed pursuant to Local Rule 4(E) is not always without recourse. Local Rule 13(C) provides:

194

"Appeals that have been automatically dismissed for failure of the appellant to timely file a motion for extension of time, and/or the failure of the appellant to timely file the record, and/or assignments of error and brief, or for failure to comply with Local Rule 22 or Local Rule 23, *will be reinstated only for good cause shown.*" (Emphasis added.)

The majority states, " * * * good cause existed, pursuant to Local Rule 13, for reinstating the case." After reading the majority opinion I fail to find *facts sufficient to establish good cause shown,* rather, I find excuses instead of reasons. I am constantly reading the phrase "a minor, technical, correctable, inadvertent violation of a local rule" as though the majority is attempting to convince itself this is the showing of good cause. This is a conclusion without foundation. Furthermore, I feel this conclusion by the majority misconstrues the meaning intended by the phrase "good cause" found in Local Rule 13(C).

Local Rule 13(C) does not enumerate the circumstances which must be present before "good cause" to reinstate an appeal will be found to exist. On the other hand, the matters to be proved in order to obtain relief from a final judgment according to Civ. R. 60(B) have been developed over the years. Considering the similar aim of Local Rule 13(C) and Civ. R. 60(B), *i.e.,* to provide for the reevaluation of a court's determination, it is not unreasonable to assume that comparable circumstances must be exhibited before a decision will be disturbed under either of these rules. One of the elements which must be demonstrated prior to relief being granted under Civ. R. 60(B) is that "the party has a meritorious defense or claim to present if relief is granted." *GTE Automatic Electric* v. *ARC Industries* (1976), 47 Ohio St. 2d 146, paragraph two of the syllabus. I believe applying the prerequisites announced in *GTE Automatic Electric* to the facts of the instant action leads one to the conclusion that "good cause" for reinstating plaintiff's appeal is non-existent since the plaintiff's claim can not be said to be "meritorious." To demonstrate the propriety of this finding it is necessary to consider the facts of this case in greater detail than those presented in the majority opinion.

The majority conveniently summarizes the proceedings leading to this appeal in such a cursory manner as to disguise the true nature of plaintiff's action. The facts of this case are briefly set forth below.

On September 18, 1924, the appellant, Harry E. DeHart purchased a life insurance policy from the appellee, Aetna Life Insurance Company, for which he paid premiums from September of 1924 to September of 1979. This insurance policy contained a provision which stated:

"If the insured becomes totally and permanently disabled * * * and satisfactory evidence of such disability is received at the Home Office of the Company, the Company will, if there has been no default in the payment of premiums, waive the payment of all premiums falling due during such disability *after the receipt of such proof.*" (Emphasis added.)

In May of 1958 the appellant became totally and permanently disabled. However, the appellant did not notify the appellee insurance company of this disability until 1979, 21 years after its onset. Notwithstanding this requirement that the insurance company receive notice and evidence of the insured's disability prior to the waiver of premiums, the appellee considered appellant's claim and decided to return the entire amount of the premiums paid from 1958 to 1979. In spite of this refund, the appellant filed suit against the appellee to recover *interest* upon the refunded premiums together with *compensatory damages, punitive damages* and *attorney fees.* The trial court granted appellee's motion for summary judgment and the appellant appealed. The Court of Appeals dismissed appellant's appeal *sua sponte* when he failed to file a transcript which he had indicated on the praecipe would be filed. The appellant made a motion for reconsideration and leave to file an amended praecipe which the Court of Appeals overruled.

The majority holds the action taken by the Court of Appeals constituted an abuse of discretion. I believe a review of the above-stated facts demonstrates otherwise. Appellent's failure to comply with Local Rule 4(E) clearly provided grounds for dismissing appellant's appeal. The majority has stated:

"Since the disposition of the trial court was by summary judgment, there was, of course, no transcript of proceedings."

They have also stated:

" * * * the entire record was before the court at the time the case was dismissed,* * * ."

Who is in a better position to know the intimacies of what transpired at the trial level than the appellant's attorney. If summary judgment was rendered in the trial court without oral hearing, or with oral hearing and no transcript was made of the proceedings, surely the clerk of court would not know this fact, nor would the Court of Appeals without some notice from appellant's counsel. The praecipe is that notice. It is difficult to understand how counsel can mark a box on the praecipe indicating he wishes the transcript filed when he knows no transcript exists. However, when the box on the praecipe is marked indicating counsel desires the transcript filed, his case is removed from the mainstream of cases and is *delayed* at least 40 days, if no extensions are requested, until that transcript is filed. In this case the praecipe was filed on September 26, 1980 and the case was dismissed *sua sponte* on November 12, 1980. Obviously plaintiff's counsel had approximately seven weeks or 47 days to discover and correct his mistake before dismissal. Dismissal is the consequence of counsel's imprudent conduct.

Nowhere in the record or in the motion for reconsideration is any evidence present remotely resembling good cause shown or the vestiges of a Civ. R. 60(B) motion. When counsel in attempting to establish facts through testimony to support his motion it is customary and necessary to file affidavits or some document under oath, *i.e.,* interrogatories, depositions, etc., along with his motion. Eighth Appellate District Local Rule 5; Civ. R. 56; *Adomeit* v. *Baltimore* (1974), 39 Ohio App. 2d 97. In the case *sub judice* appellant's counsel filed no such material along with his motion for reconsideration to demonstrate "good cause shown."

Appellant's counsel failed to comply with Local Rule 5 which in part states as follows:

"It remains the *duty of the appellant* to cause timely transmission of the record or to seek an extension of time from this court if good cause therefore exists. Applications for extensions of time to transmit the record shall be made by written motions and *shall* be *accompanied* by one or more *affidavits* setting forth facts showing good cause for the extension." (Emphasis added.)

Nowhere in the motion itself or in the brief accompanying

the motion has counsel stated that his actions were mistakenly "made in good faith and not * * * for the purpose of delay," not to mention the complete failure to file an affidavit of any kind. The only reference to faintly support counsel's motion is material contained in his brief relating his action was "inadvertent;" he does not state even in his brief his actions were "made in good faith and not * * * for the purpose of delay." Briefs and oral arguments are not the vehicles by which facts are established or presented to the courts. Briefs merely present written arguments based on previously established facts. The majority, however, has extracted the word "inadvertence" from counsel's brief and by inference, assumption, supposition and conjecture has by some mysterious process transformed it into "mistake * * * made in good faith and not * * * for the purpose of delay." I submit from the way the record is now composed the exact opposite result may be reached.

Statements of counsel contained in his brief or oral argument are considered outside the record and may not be considered by the Court of Appeals in its determination of an issue. It is obvious the majority has resorted to material outside the record to arrive at its decision. It appears the court has cast aside long accepted precedent and procedure based upon the local rules, the Civil Rules and *stare decisis.*

In addition, counsel has failed in any shape or form to state or even raise the element of a meritorious claim. It is difficult to determine how the Court of Appeals abused its discretion when it had *absolutely nothing* before it to demonstrate good cause shown. In fact, if the Court of Appeals had ruled otherwise than the way it did, it certainly would have abused its discretion.

The Court of Appeals examined the motion for rehearing and determined "good cause" to reinstate the case had not been shown. In essence the majority appears to be saying the Court of Appeals abused its discretion by refusing to reinstate a frivolous appeal. It is difficult to understand how such a position can be correct.

In the instant action appellant's counsel performed in the following manner: (1) failed to mark the proper box on the praecipe triggering a *40-day delay* in the processing and hear-

ing of the case; (2) failed to discover his error within approximately seven weeks *causing further delay* in the processing and hearing of the case; (3) failed to file an affidavit relating to the Court of Appeals any legitimate reason demonstrating good cause. The majority not only condones counsel's behavior but also rewards his behavior by remanding the case so that counsel may try again. Moreover, strictly following the majority opinion would make it incumbent upon the lower courts to hire additional personnel at taxpayers' expense to read through the dockets and records to correct counsels' mistakes.

Another particularly perplexing aspect of the majority opinion is the assertion that "appellant should not be punished for a highly technical error of his counsel." This statement directly contradicts pronouncements of both the United States Supreme Court and this court. In *Link* v. *Wabash RR. Co.* (1962), 370 U. S. 626, the United States Supreme Court, at pages 633-634, stated:

"There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."

This court stated in *GTE Automatic Electric* v. *ARC Industries, supra,* (47 Ohio St. 2d 146), paragraph four of the syllabus, when we adopted the position espoused by the United States Supreme Court in *Link:*

"As a general rule, the neglect of a party's attorney will be imputed to the party for the purposes of Civ. R. 60(B)(1)."

Civ. R. 60(B)(1), the relevant subdivision in *GTE*, provides for relief from a final judgment, order or proceeding if "mistake, inadvertence, surprise or excusable neglect" is demonstrated. Without explicitly referring to Civ. R. 60(B) it appears the majority in the instant action is relying upon the justifications enumerated therein despite the fact that plaintiff's attorney never filed anything remotely resembling a Civ. R. 60(B) motion.

To adopt any posture other than that announced in *GTE* would lead to the illogical result that a client could rely upon attorney error to avoid many of his judicial ills. The inherent

danger of such a system was succinctly recognized in *Link* when the United States Supreme Court stated, at page 634, fn. 10:

" * * * keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant. * * * "

It is without doubt the *duty of appellant's counsel when he initiates an appeal* to comply with all the rules and regulations incident to perfecting that appeal. He is an attorney engaged in the practice of law receiving compensation from his client for services rendered.

The majority acknowledges that " * * * local appellate rules are needed in order to achieve the prompt and efficient dispatch of justice." At the same time, however, the majority opinion validates an action which tends to undermine the integrity of these local rules, despite the constitutional mandate contained in Section 5, Article IV of the Ohio Constitution.

It has always been a point of bewilderment to me why so much time and money is expended and committees are appointed to formulate rules to facilitate the orderly and expeditious progression of cases through our court system, then the rules are ignored with impunity. If the popular theory is to ignore the rules with impunity as the majority advocates, then dispense with the rules altogether. Why have them on the books? In my opinion the message conveyed by the majority is to reward those who breach or ignore the rules, penalize those who follow them and censure the Eighth District Court of Appeals for following rules and *stare decisis*. The majority decision hardly fosters or encourages a strong, informed and learned bar.

The majority opinion accomplishes not only the above stated results, but also accomplishes disillusionment and chaos within the legal profession.

This court must be willing to implement the rules we have allowed the lower courts to promulgate. If we refuse to enforce these local rules as written we are, in effect, giving the power to create these rules with one hand while taking away the power to enforce them with the other hand. Furthermore, we should not carve out nebulous exceptions to these local

rules for "minor, technical, correctable, inadvertent" violations, for a rule with a myriad of exceptions is as effective as no rule at all.

In *Vorisek* v. *North Randall* (1980), 64 Ohio St. 2d 62, 65, this court stated:

"As previously stated in *Drake* v. *Bucher* (1966), 5 Ohio St. 2d 37, 39-40:

" 'There is no excuse for the failure of any member of the bar to understand or to comply with the rules of this court. They are promulgated so that causes coming before the court will be presented in a clear and logical manner, and any litigant availing himself of the jurisdiction of the court is subjected thereto. Not to be minimized is the necessity of compliance as an accommodation to the correct dispatch of the court's business.'

"Although our observations in *Drake, supra,* pertained to compliance with our own Rules of Practice, the sentiments expressed therein are equally applicable to Local Rules.

"While the sanction of dismissal is an extreme measure, not to be indiscriminately applied, the line must be drawn so that Local Rules continue to be respected and the threat of sanctions continues to be an effective deterrent to the rampant disregard of those rules."

Without any compelling explanation given, this court's disposition in the case *sub judice* seems clearly at odds with our recent pronouncement in *Vorisek.*

The majority also states the appellee has not been prejudiced. This conclusion perhaps is not shared by appellee which thought the case against it was dismissed and now must not only bear the expense of this appeal but must also bear the expense of further litigation. The inequity of the situation is compounded when one considers the instant action is based upon a written contract for which the statute of limitations is 15 years and the action was filed 21 years after the alleged breach, if any. See R. C. 2305.06.

I, too, am sympathetic with the "fundamental tenet of judicial review in Ohio that courts should decide cases on the merits." However, if we allow the rules and *stare decisis* to be ignored the entire concept of equal justice under law is undermined.

The majority closes with its assertion that "[l]ocal rules, * * * should not be used as a judicial mine field, with disaster lurking at every step along the way." May I suggest that anyone attempting the noble practice of law first arm himself with the knowledge of how to read, to understand that which he reads, then read the rules and cases which pertain to his problem before he embarks upon his voyage. These few simple requirements are not too much to expect of an individual who designates himself as an attorney at law and who is ready, willing and able to accept retainers for his services. If these simple rules are followed the bogeymen and hobgoblins who seek to undermine his endeavors will all disappear and he will emerge unscathed and a better attorney.

In summary, I respectfully decline the invitation to join the majority's decision for the following reasons:

1. Counsel failed to mark the proper box on the praecipe, thus triggering a 40-day delay;

2. Counsel failed to discover his error within approximately seven weeks or 47 days;

3. Counsel failed to file an affidavit stating facts to support good cause shown;

4. Counsel failed to follow accepted appellate procedure (Local R. 13[C]; Local R. 5; Civ. R. 7[B]; *Adomeit* v. *Baltimore, supra)*;

5. The majority has gone outside the record to justify its conclusions;

6. The majority fosters disregard for the local rules, although the authority to formulate and adopt local rules by the appellate districts is grounded in the Constitution (Section 5, Article IV of the Ohio Constitution);

7. The majority failed to follow its own recent decisions, as well as recent decisions of the United States Supreme Court, *i.e., stare decisis (GTE, supra,* and *Link, supra)*;

8. The majority creates confusion within the profession by rewarding those who ignore the rules and penalizing those who follow them;

9. The majority unjustly censures the Eighth District Court of Appeals; and,

10. The majority not only advocates the abdication of professional responsibility thereby shifting this obligation to an

202

already overburdened court and clerk, but also encourages the slovenly practice of law. *Cobb*. v. *Cobb* (1980), 62 Ohio St. 2d 124.