JOHNSON, INCOMPETENT, ETC. *v.*
DEPARTMENT OF MENTAL
RETARDATION AND DEVELOPMENTAL
DISABILITIES. ■

(No. 84-02085—Decided
July 21, 1987.)

Court of Claims of Ohio.

*Jeffrey W. Brader,* for plaintiff.
*Anthony J. Celebrezze, Jr.,* attorney general, and *Susan M. Sullivan,* for defendant.

CLINE, J. Jewell M. Maines, as guardian of Hubert Johnson, filed this action on February 23, 1984, alleging that while Johnson was a retarded inpatient, and thus an invitee, at the defendant Ohio Department of Mental Retardation and Developmental Disabilities facility located in the city of Warrensville, Cuyahoga County, the defendant negligently caused, permitted or allowed Johnson to receive personal injury, directly and proximately causing serious personal injury and great pain and suffering.

Johnson died August 17, 1985 (not as a result of his injury) and on September 17, 1986, the guardian filed a pre-trial statement setting forth Johnson's death.

The administratrix of Johnson's estate was so appointed on February 11, 1987, and filed a motion to substitute herself as plaintiff in this action on February 12, 1987.

The defendant state hospital filed a motion to dismiss the action because plaintiff failed to comply with Civ. R. 25.

Civ. R. 25 provides:
"(A) Death
"(1) If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. * * * Unless the motion for substitution is made not later than ninety days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

"(2) In the event of the death of one or more of the plaintiffs or of one or more of the defendants in an action in which the right sought to be enforced survives only to the surviving plaintiffs or only against the surviving defendants, the action does not abate. The death shall be suggested upon the record and the action shall proceed in favor of or against the surviving parties.
"(* * *

"(E) Suggestion of death or incompetency. Upon the death or incompetency of a party it shall be the duty of the attorney of record for that party to suggest such fact upon the record within fourteen days after he acquires actual knowledge of the death or incompetency of that party. The sugges-

tion of death or incompetency shall be served on all other parties as provided in Rule 5."

In the present case the plaintiff's attorney failed to comply with Section (E), by failing to suggest Johnson's death upon the record and obtaining service as required; therefore, the ninety-day provision (Section (A)[1]) never started to run.

If Section (A)(1) or (E), or both in combination, is a mandatory statute of limitations, the action of plaintiff should be dismissed.

If it is a minor, inadvertent violation of the rules the court should allow the motion for substitution upon the following conditions, stated in *DeHart v. Aetna Life Ins. Co.* (1982), 69 Ohio St. 2d 189, 23 O.O. 3d 210, 431 N.E. 2d 644, syllabus, as follows:

(1) the mistake was made in good faith and not as part of a continuing course of conduct for the purpose of delay,

(2) neither the opposing party nor the court is prejudiced by the error,

(3) dismissal is a sanction that is disproportionate to the nature of the mistake,

(4) the client will be unfairly punished for the fault of his counsel, and

(5) dismissal frustrates the prevailing policy of deciding cases on the merits.

R.C. 2305.21 states:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto."

The court will grant the motion to substitute the administratrix as plaintiff and deny the motion to dismiss. While survivability of a cause of action may be substantive, the survival statutes are remedial in their nature and are therefore to be liberally construed.

*Tracy* v. *Admr. of Card* (1853), 2 Ohio St. 431.

The defendant filed an answer setting forth the defenses of: (1) denial, and (2) failure to state a claim upon which relief can be granted.

## Issues

The plaintiff states the issues as:

1. How Johnson received the injury to his forehead and the bite marks to his body on August 11, 1982.

2. Whether Johnson's injuries were the result of defendant's negligence.

3. The nature and extent of the injuries suffered by Johnson.

4. The nature and extent of the damages claimed by Johnson.

The defendant states the issues as:

1. How Johnson received the injury to his forehead on August 11, 1982.

2. Whether Johnson's injury was the result of any negligence on the part of the defendant.

3. The nature and extent of the injuries suffered by Johnson.

4. The nature and extent of the damages claimed by Johnson.

Plaintiff does not claim and there was no evidence that Johnson was assaulted by an employee of defendant while acting within the scope of his employment (or even outside it), but that the evidence indicated that when Harold James found Johnson, another patient, a Mr. Edy, stated that: "Mark Henderson pushed (Johnson) into the door."

## Facts

Hubert Johnson, a sixty-six year old profoundly retarded male, was a resident at cottage 8, on the 100 side, of the Northeast Ohio Developmental Center, Warrensville Unit, from November 16, 1980 to September 12, 1982. The cottage housed thirty-two residents, sixteen on each side, and having a ratio of one to eight

employees to patients with three staff members assigned to the 100 side.

The central eating activity area is about 30' x 40', and the living rooms and each bedroom 20' x 20'. The bedrooms accommodated four people in each unit although there was no partition between beds.

The functioning of those on the 100 side was greater than on the 200 side. Johnson, who was hard of hearing, had an unsteady gait, and severe eyesight problems (cataracts), was compatible, did not wander off, and was free to move about at will.

The employees at the cottage were Delores Holoway, supervisor on the 200 side; Harold James, who was at the unit (but attending to another patient) at the time of the injury; and Leonard Allan, who was on break; Lillian Mixon; Cornelia Russell; Susan Marshall; and Linda Shehee. The doctor and other persons who examined Johnson at the time of his injuries did not observe bite marks.

On the evening of August 11, 1982, at about 7:10 p.m., James, who was working the 3:00 to 11:00 shift, was assisting another patient in the cottage about thirty feet away from Johnson when he (James) was summoned by one of the patients to the doorway of the north bedroom area of the cottage where he found Johnson prostrate with a cut over both eyes and bleeding. He administered first aid and then took Johnson to the hospital.

The plaintiff's brief alleged, "there appears to have been one witness to the event stating that the injury was caused by the unsupervised violent actions of another client. [Johnson] was immediately transferred to Suburban Hospital where representatives of the Warrensville Center indicated that [Johnson] had been injured by another patient of the center. He received treatment and was released back to the Warrensville Unit. His medical bills were all paid by the state."

James stated that they had not known the patient Henderson to be abusive although he acknowledged that there were occasionally biters on the premises but that there was no biter then in the cottage.

The plaintiff failed to prove by a preponderance of the evidence that the defendant was negligent by nonfeasance or misfeasance. Johnson was a patient subject to discipline and direction of the defendant, and the state of Ohio was not desirous of seeing him injured. The act of pushing Johnson into the door was a wrong committed by a third party for which the plaintiff failed to prove by a preponderance of the evidence that the state of Ohio or its agents had a warning or should have foreseen such danger ("foreseeability" is considered in light of 1 O.J.I. 7.13 [1983]). The state is not an insurer.

Johnson was injured when he struck a door in the northeast doorway of the cottage. The patient Edy said, "Mark Henderson pushed him into a door." James stated that Johnson had never been any trouble and there was blood on the door where Johnson had struck it and that one of two patients must have pushed him. The investigating police officer Jerry Koush had not previously investigated injuries to Johnson, although Johnson's nephew, Mr. Swain, said that he observed bite marks on Johnson several times (once in the summer of 1981 on his wrist) and that his arm was also swollen. The nephew added that Johnson's appearance changed in the spring of 1981 when he began to use a wheelchair; that he had never previously observed his uncle fall down; that his uncle's condition did not seem to improve after 1981; that he had reported bite marks on his uncle to James, the male attendant. When the nephew reported the bruises and marks he was informed that the staff did not know how the marks got there. James reported that

Johnson had fallen from the wheelchair in January. The nephew stated that he had taken the patient out on a couple of weekends in March and May 1981.

In the present case the plaintiff failed to prove by a preponderance of the evidence that Henderson was a dangerous or violent patient, or that the state knew or should have known or foreseen Henderson's alleged propensity to be aggressive. The preponderance of the evidence indicated that the patients in the 100 side were not violent or abusive and that they did not require twenty-four-hour individual surveillance. The plaintiff alleged that there was a biter in the unit and James confirmed that from time to time a biter would be in the unit but that upon discovery the biter would be transferred outside the unit, and that he knew of none at the present time.

### Law

The duty and standard of care for mentally retarded and developmentally disabled persons is set forth in R.C. 5123.62 and 5123.64.

R.C. 5123.62:

"The rights of mentally retarded persons and of developmentally disabled persons include, but are not limited to:

"(A) The right to be treated at all times with courtesy and respect and with full recognition of their dignity and individuality;

"(B) The right to an appropriate, safe, and sanitary living environment that complies with local, state, and federal standards and recognizes the person['s] need for privacy and independence;
"* * *

"(E) The right of timely access to appropriate medical or dental treatment;
"* * *

"(G) The right to receive appropriate care and treatment in the least intrusive manner;
"* * *

"(O) The right to be free from emotional, psychological, and physical abuse;

"(P) The right to participate in appropriate programs of education, training, social development, and habilitation and in programs of reasonable recreation;
"* * *

"(R) The right to select a parent or advocate to act on their behalf;
"* * *

"(V) The right to be free from unnecessary chemicals or physical restraints.
"* * *"

R.C. 5123.64:

"(A) Every provider of services to persons with mental retardation and developmental disabilities shall establish policies and programs to ensure that all staff members are familiar with the rights enumerated in section 5123.62 of the Revised Code and observe those rights in their contacts with persons receiving services. Any policy, procedure, or rule of the provider that conflicts with any of the rights enumerated shall be null and void. Every provider shall establish written procedures for resolving complaints of violations of those rights. A copy of the procedures shall be posted at all times in a place accessible to persons receiving services, and a copy shall be provided on request to any person receiving services or to any parent, guardian, or advocate of a person receiving services.

"(B) Any mentally retarded or developmentally disabled person who believes that his or her rights as enumerated in section 5123.62 of the Revised Code have been violated may:

"(1) Bring the violation to the attention of the provider for resolution;

"(2) Report the violation to the department of mental retardation and

developmental disabilities, the ombudsman section of the legal rights service, or the appropriate county board of mental retardation and developmental disabilities;

"* * *"

To recover, the plaintiff must prove by a preponderance of the evidence that the state operated the cottage in a negligent manner, below the standard required of provider hospitals and that such negligence was the proximate cause of Johnson's injuries.

The plaintiff seeks to claim negligent operation by showing a lack of staff personnel; by showing that those persons operating the cottage operated the cottage in a negligent manner by not giving Johnson constant watch; and that one or both facts were the proximate cause of Johnson's injuries.

The lack of staff personnel has been considered to be within the discretion of the legislature, and is not reviewable in the Court of Claims. R.C. 2743.01 et seq.; Boggess v. Torrent (1976), Ct. of Claims No. 75-0101, unreported; Siegle v. Moritz (1977), Ct. of Claims No. 75-0363, unreported; see, also, Luke v. New York (1937), 253 App. Div. 783, 1 N.Y. Supp. 2d 19. There was no evidence of a standard requiring increased personnel and the plaintiff failed to prove by a preponderance of the evidence that a greater staff was required. The plaintiff failed to prove by a preponderance of the evidence that an employee or agent of the defendant performed any positive act which could be considered negligent or the proximate cause of Johnson's injuries. The plaintiff also claims that Johnson required twenty-four-hour surveillance and that the failure of the state to prudently provide personnel for such surveillance was a failure to act prudently and was negligence, and the proximate cause of Johnson's injuries.

There was no expert testimony and surely not a preponderance of the evidence that Johnson required twenty-four-hour attention. The attendant, James, was within thirty feet of Johnson when the accident happened, and that would indicate the defendant provided the standard of care required. In a similar case involving a prisoner, the Franklin County Court of Appeals in Baker v. State (1986), 28 Ohio App. 3d 99, 28 OBR 142, 502 N.E. 2d 261, held:

"1. The state is not liable, for failure to provide protective custody, to an inmate who was injured in a state correctional facility by other inmates where the state did not have adequate notice of an impending assault.* * *

"2. The state is not liable, for failure to have sufficient guards, to an inmate who was injured in a state correctional facility by other inmates where there is expert testimony that the procedures in question were adequate and there were no formal, written rules to the contrary.* * *" (Emphasis sic.)

The plaintiff has advanced the doctrine that res ipsa loquitur applies where an instrumentality or the creation of conditions causing injury was under the exclusive control of defendant, Merritt v. Deaconess Hospital (1975), 48 Ohio Misc. 7, 2 O.O. 3d 245, 357 N.E. 2d 65; Shields v. King (1973), 40 Ohio App. 2d 77, 69 O.O. 2d 57, 317 N.E. 2d 922, and the injury occurred under circumstances which, in the ordinary course of events, the injury would not have occurred if ordinary care had been observed. Hake v. Wiedemann Brewing Co. (1970), 23 Ohio St. 2d 65, 52 O.O. 2d 366, 262 N.E. 2d 703.

The rule applies where the defendant causes the injury and it warrants only an inference of negligence but does not raise a presumption of negligence and it disappears when direct evidence is offered on the subject. Union Gas & Electric Co. v. Waldsmith (1929), 31 Ohio App. 118, 166 N.E.

588; *Taxicabs of Cincinnati, Inc.* v. *Kohler* (1959), 111 Ohio App. 225, 12 O.O. 2d 366, 165 N.E. 2d 244. It does not predominate where there are two or more possible causes of injury. Thus, where two or more inferences may be drawn from the same set of facts the rule does not apply to determine which should predominate. In *Boggess* v. *Torrent, supra,* the court indicated that *res ipsa loquitur* did not apply to cases involving mental patients.

This court follows the definitions of "inference" as defined in 1 O.J.I. 7.35 (1983):

"2. INFERENCE. To infer, or to make an inference, is to reach a reasonable (conclusion) (deduction) of fact from other facts which you find have been established by direct evidence. An inference is reasonable when the (conclusion) (deduction) naturally and logically follows, according to the common experience of mankind. It rests entirely with you whether you make any one or more inferences."

*"Res ipsa loquitur"* is defined in 1 O.J.I. 7.35 (1983):

"1. DEFINED. Where the (instrument) (vehicle) (occurrence) which caused the (injury) (damage) is in the exclusive control of the defendant, and the event is one that would not have happened (if ordinary care had been used) (without the defendant's negligence according to [reason] [the common experience of mankind]) you may, but you are not required to, infer from these circumstances that the defendant was negligent. Such inference, if made, is sufficient for a finding of negligence; however, the defendant may equal or overcome such inference by evidence tending to show (that or-

dinary care was used) (that the injury was not caused by a lack of ordinary care). The weight of the inference of defendant's negligence, as well as the weight of the explanation offered to meet that inference, are for you to determine."

"Negligence" is set forth in 1 O.J.I. 7.10 (1983):

"1. NEGLIGENCE. What is negligence? Negligence is a failure to use ordinary care. Every person is required to use ordinary care to avoid injuring another person or another's property.

"2. ORDINARY CARE. Ordinary care is the care that a reasonably (cautious) (careful) (prudent) person would use under the same or similar circumstances."

## Finding

The court finds that the plaintiff failed to prove by a preponderance of the evidence that the state was guilty of negligence (nonfeasance or misfeasance in the operation of cottage 8, unit 100, Northeast Ohio Developmental Center on August 11, 1982) and failed to prove by a preponderance of the evidence that such alleged negligence proximately caused Johnson's injuries.

The injuries were proven to have been caused by third parties whose conduct the state could not reasonably anticipate or prevent while in the exercise of due care in the operation of the aforementioned health care facility.

The judgment is for the defendant.

*Judgment for defendant.*

GUY G. CLINE, J., retired, of the Probate Court of Pickaway County, sitting by assignment.