OPINION
On August 20, 1997, appellee, Paul Simpson, filed a complaint against appellant, James Sexton, for payment of a dishonored check in the amount of $25,000. On October 3, 1997 with leave of court, appellant filed an answer.
On October 17, 1997, appellee filed a motion for summary judgment. By judgment entry filed November 21, 1997, the trial court denied said motion finding joinder of a party, appellant's business, A-1 Superior Stucco, Inc., was necessary because the dishonored check was issued on the company's check from a business line of credit.
On December 1, 1997, appellee filed an amended complaint to include A-1. On December 22, 1997, appellee filed a motion for default judgment for appellant's failure to answer the amended complaint. On December 26 and 31, 1997, respectively, appellant filed a motion for leave to answer out of rule and a motion to strike the amended complaint. By judgment entry filed February 10, 1998, the trial court denied the motion for default judgment, granted appellant's motion for leave and denied the motion to strike the amended complaint.
On February 20, 1998, appellant filed an answer and counterclaim claiming appellee owed appellant "in excess of $13,000" on an unpaid loan.
On February 25, 1998, appellee filed a motion for summary judgment on all claims. Appellee filed an answer to the counterclaim on March 19, 1998. By memorandum of decision filed April 1, 1998 and judgment entry filed April 8, 1998, the trial court granted the motion for summary judgment in all respects, awarding appellee $25,000 plus interest from July 29, 1997 and costs.
On April 23, 1998, appellant filed a notice of appeal. On April 30, 1998, appellee filed a notice of cross-appeal. This matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN SUSTAINING PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS IT RELATES TO THE DISHONOR OF THE $25,000.00 CHECK.
II
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING SUMMARY JUDGMENT AS TO DEFENDANT-APPELLANT'S COUNTERCLAIM OR IN DISMISSING THE COUNTERCLAIM FOR FAILURE TO STATE A CAUSE OF ACTION.
CROSS-ASSIGNMENT OF ERROR I
 THE TRIAL COURT'S INTERLOCUTORY ORDER, NOW MERGED WITH THE FINAL JUDGMENT, DENYING THE APPELLEE'S MOTION FOR DEFAULT JUDGMENT IS CONTRARY TO LAW.
On June 17, 1998, appellee filed a motion to dismiss this appeal for appellant's failure to follow several procedural rules. Appellant has filed an amended docketing statement and an amended brief to cure the errors. We will decide this case on the merits.DeHart v. Aetna Life Insurance Co. (1982), 69 Ohio St.2d 189. Appellee's motion to dismiss this appeal is denied.
 I
Appellant claims the trial court erred in granting summary judgment to appellee on his complaint. We disagree.
Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule has recently been reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins
(1996), 75 Ohio St.3d 447, 448:
 Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming
(1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.
As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court.Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
The undisputed facts are as follows:
1) Appellant is the owner of A-1.
 2) Appellant and appellee entered into the following agreement:
 The parties do for themselves and for their successors and assigns, release and forever discharge each other and their respective successors and assigns, heirs, employees, officers, directors and agents from any and all claims, demands, liens, actions and/or causes of action, loss of services, expenses and compensation on account of, or in any way growing out of their participation and/or interest in the business entity known as A-1 Superior Stucco, Inc.;
 As and for consideration, Paul David Simpson hereby relinquishes any and all proprietary, ownership, or other interest which he may have in A-1 Superior Stucco, Inc., including, but not limited to, its books, records, accounts receivable, equipment, tools, vehicles and any other property owned by, leased or otherwise used for the benefit of A-1 Superior Stucco, Inc.
 3) On July 8, 1997, appellant issued a $25,000 check to appellee.
 4) The check was dishonored pursuant to a stop payment order issued by appellant.
Appellant argues after delivering the check to appellee, he learned appellee "in fact possessed no such proprietary or ownership interest in the corporation, and had falsely induced this affiant [appellant] to purchase back such interest with knowledge that he (Simpson) [appellee] held none." See, Sexton Affidavit attached to Defendant's Memorandum Contra Plaintiff's Motion for Summary Judgment filed November 10, 1997. Attached to this same memorandum is appellant's affidavit as to admissions and answers to interrogatories. In response to appellee's Interrogatory No. 8, appellant stated the following:
 Defendant [appellant] believed the $25,000.00 was to buy back said shares and return an investment plus accrued equity. Defendant [appellant] subsequently learned that Plaintiff [appellee] had misrepresented the facts; that Plaintiff [appellee] had invested no funds in the company; that no shares had ever been issued to Plaintiff [appellee], and that he therefore had no shares to return.
In answering appellee's Interrogatory No. 10, appellant stated "[t]here was no consideration because Plaintiff [appellee] possessed no interest in the corporation and had no shares to return. The Release recited as consideration that Plaintiff [appellee] would renounce any claim or interest he had in the corporation; he had none. Sham consideration is no consideration." In answering Interrogatory No. 11, appellant stated "[b]efore delivery of the check Plaintiff [appellee] threatened Defendant [appellant] that he would commit suicide if Defendant did not buy out his supposed interest, shooting himself with a .44 Magnum. This placed Defendant [appellant] under enormous stress and duress."
Appellee argues the release was not specifically a contract for the sale of stock but a release of any claims, interest and assets he may have had in A-1. Appellee argues his relinquishment was sufficient consideration to support the release. Appellee also argues appellant did not set forth any elements necessary to establish duress therefore said claim should fail.
By memorandum of decision filed April 1, 1998, the trial court found the release was supported by consideration, the language of the release was clear and unambiguous and there was no evidence of duress. We agree with the trial court's conclusions.
A clear reading of the release language cited supra evidences appellee agreed to relinquish "any and all proprietary, ownership, or other interest which he may have in A-1" in exchange for $25,000. Appellee's relinquishment is valuable consideration to support the agreement.
Appellant's argument the release is ambiguous and does not reflect the intention of the parties because he expected to receive "shares of stock" must fail. The release is clear and unambiguous in that appellee agreed to relinquish "any and all" of his interest in A-1. Although the release is silent as to stock, clearly if appellee owned shares of A-1 stock said stock would be subject to release because the language of the release encompassedall interests which appellee possessed. In addition, in his admissions attached to Plaintiff's Supplement to his Motion for Summary Judgment or Partial Summary Judgment, appellant admitted appellee was not a shareholder of A-1. Furthermore, the release included an integration clause wherein the parties agreed as follows:
 It is further understood and agreed that there is no unwritten promise or agreement on the part of either of the parties, persons, firms or corporations and that this release and relinquishment of interest contains the entire agreement between the parties hereto and that the terms of this document are contractual and not mere recitals.
 It is further acknowledged that the foregoing Release of Claim and Relinquishment of Interest has been read and understood and that a full understanding of all of its terms have been acknowledged and that the execution of this instrument is a free and voluntary act of the parties.
The latter sentence flies in the face of appellant's duress claim. In order to successfully avoid a contract through duress, a party must demonstrate "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." Blodgett v. Blodgett
(1990), 49 Ohio St.3d 243, 246.
The trial court had before it appellant's claim appellee threatened to shoot himself if appellant did not agree to the release. Clearly if the release included the conveyance of stock appellant would find the release agreeable. Appellant expected a benefit in return for the check. Furthermore, the alleged threat was directed at appellee, not appellant. There was no evidence before the trial court to establish the elements of duress.
In the same admissions wherein appellant admitted appellee was not a shareholder of A-1, appellant also admitted to signing the release and the check, delivering the check to appellant and stopping payment of the check. Based upon the language of the release and appellant's admissions, we find the trial court did not err in granting summary judgment to appellee on his complaint.
Assignment of Error I is denied.
 II
Appellant claims the trial court erred in granting summary judgment to appellee on appellant's counterclaim. We disagree.
Civ.R. 8 governs general rules of pleading. Subsection (A) states a pleading "shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled."
In his counterclaim filed February 20, 1998, appellant claimed the following:
 19. Plaintiff borrowed in excess of $13,000 from Defendant Sexton to pay Plaintiff's obligations to the IRS and other taxing authorities in 1994 and 1995, which sums have not been repaid by Plaintiff.
 20. Such failure to pay has caused Defendant Sexton economic hardship and loss.
The counterclaim does not state the amount, the time or the place of the alleged loan or loans. The demand for judgment asks for "judgment in favor of Defendant Sexton on his counterclaim" but does not specify an amount. The counterclaim does not state any legally cognizable claim for recovery.
Upon review, we find the trial court did not err in granting summary judgment to appellee on appellant's counterclaim.
Assignment of Error II is denied.
 CROSS-ASSIGNMENT OF ERROR I
Appellee presented a cross-assignment of error in the event the summary judgment was reversed or modified. In light of our decision to affirm, we find this assignment of error to be moot.
The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
By Farmer, P.J., Hoffman, J. and Wise, J. concur.