DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Janice Green has appealed the judgment of the Medina County Court of Common Pleas which granted summary judgment in favor of Defendant-Appellee Westfield National Insurance Company. This Court affirms.
 I {¶ 2} The present action stems from a motor vehicle accident in 2003, in which Plaintiff-Appellant Janice Green sustained severe injuries when the car in which she was riding as a passenger, and which was operated by her husband, Chester Green, was struck by a vehicle driven by Byron White.[1] At the time of the accident, Appellant and her husband were covered under an automobile policy (the "Westfield policy") issued by Defendant-Appellee Westfield National Insurance Company ("Westfield") which provided $1,000,000 in liability coverage and $1,000,000 in uninsured/underinsured motorist coverage ("UM/UIM"). It is undisputed that the vehicle the Greens were operating at the time of the accident was an identified vehicle under the Westfield policy. Because the liability portion of the Westfield policy specifically excluded coverage for bodily injury to family members, Appellant made a claim for her damages under the UI/UIM portion of the Westfield policy. Westfield rejected Appellant's claim and denied coverage.
 {¶ 3} On January 18, 2005, Appellant filed a claim in the Fairfield County Court of Common Pleas, alleging breach of contract, bad faith, and class action certification. Appellant filed an amended complaint on January 21, 2005. On February 23, 2005, Westfield filed its answer and counterclaim seeking declaratory judgment. On August 17, 2005, and upon Westfield's motion, the trial court transferred the matter to Medina County.
 {¶ 4} Appellant filed a motion for partial summary judgment as to liability on her breach of contract claim on November 16, 2005. On December 30, 2005, Westfield filed a cross-motion for summary judgment as to all of Appellant's claims and its own claim for declaratory judgment. On March 23, 2006, the trial court granted Westfield's motion for summary judgment and entered judgment for Westfield on all of Appellant's claims.
 {¶ 5} Appellant has timely appealed, asserting one assignment of error.
 II Assignment of Error
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE AND IN DENYING SUMMARY JUDGMENT TO PLAINTIFF-APPELLANT ON HER CLAIM FOR BREACH OF CONTRACT."
 {¶ 6} In her sole assignment of error, Appellant has argued the trial court improperly granted summary judgment to Westfield. Specifically, Appellant has argued that R.C. 3937.18(I)(1) precludes an insurer from denying UM/UIM coverage for an automobile that is specifically identified in the policy and for which the insured has been charged a premium. We disagree.
 {¶ 7} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12. "We review the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion." Am. Energy Servs., Inc. v. Lekan
(1992), 75 Ohio App.3d 205, 208. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 8} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id. at 292-293.
 {¶ 9} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, Henklev. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 10} Pursuant to Civ.R. 56(C):
"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 11} It is uncontested that Appellant's vehicle was an uninsured motor vehicle to the extent that Westfield had denied coverage based on an intra-family exclusion on liability coverage. However, the Westfield policy also precluded any vehicle "[o]wned by or furnished or available for the regular use of you or a family member" from being considered an uninsured motor vehicle. Therefore, under the Westfield policy, the vehicle that was involved in the crash did not qualify as an uninsured vehicle because it was owned by Appellant's husband. Accordingly, under this exclusion, Appellant was not entitled to UM/UIM motorist coverage. It is the validity of this exclusion which Appellant has challenged.
 {¶ 12} Appellant argued below that the critical factor in the matter was the applicability of R.C. 3937.18. R.C. 3937.18 has been amended several times in recent history. It is well established that "`for the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties.'" Likens v. Westfield Ins. Co., 9th Dist. No. 22408, 2005-Ohio-3948, at ¶ 12, quoting Ross v. Farmers Ins.Group of Cos. (1998), 82 Ohio St.3d 281, 289. As the automobile insurance policy at issue herein was effective May 28, 2003, the most recent version of R.C. 3927.18, as amended by Senate Bill 97 and effective October 31, 2001, is applicable. Specifically, Appellant has relied on R.C. 3937.18(I)(1), which provides that:
"Any policy of insurance that includes uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under specified circumstances, including but not limited to any of the following circumstances:
"While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages are provided[.]"
In its cross motion for summary judgment, Westfield agreed that R.C. 3937.18 was dispositive, but argued that R.C. 3937.18, as amended by Senate Bill 97, eliminated the requirement of mandatory UM/UIM coverage and granted insurers the latitude to include exclusions and limitations in its contract.
 {¶ 13} In granting summary judgment to Westfield, the trial court noted that Appellant's argument was grounded in R.C.3937.18(I)(1) which allows an exclusion of coverage if the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, which is not specifically identified in the policy. According to the trial court, Appellant's argument relied upon a construction of R.C. 3937.18(I)(1) in which the inverse is also true: that a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, cannot be excluded from the definition of an uninsured or underinsured motor vehicle if it is specifically identified in the UM/UIM policy.
 {¶ 14} In its decision, the trial court reasoned that the phrase "including to but not limited to" employed by the legislature clearly allowed other means of excluding vehicles owned by, furnished to, or available for the regular use of a named insured, spouse, or resident relative. The trial court concluded that an insurance company is permitted under R.C.3937.18 "to draft the very exclusion that Westfield drafted in this contract."
 {¶ 15} Appellant's argument is identical on appeal. Appellant has contended that the trial court placed too much emphasis on the "including but not limited to" language contained in the statute. Appellant has argued that in doing so, the trial court construed the statute to effectively eliminate the legislature's intent "to declare that if a vehicle is specifically identified in the automobile policy and the insured pays a premium for the coverage, the insurance company can not avoid its contractual obligations by precluding coverage elsewhere." Because we conclude that the neither the statute's plain meaning nor the legislative intent supports Appellant's argument, we find that the trial court properly granted summary judgment to Westfield.
 {¶ 16} First, the plain language of R.C. 3937.18(I)(1) supports Westfield's preclusion of vehicles "[o]wned by or furnished or available for the regular use of you or a family member" from its definition of uninsured motor vehicle. R.C.3937.18(I)(1) specifically allows insurers to "include terms and conditions that preclude coverage for bodily injury * * * suffered by an insured under specified circumstances, includingnot limited to any of the following circumstances[.]" (Emphasis added). The language chosen by the legislature necessarily means that an insurer is allowed to include terms and conditions which preclude UM/UIM coverage for circumstances other than those listed in the statute, provided they are specified within the policy. In the present case, the Westfield policy clearly sets out its terms and conditions: vehicles owned by or furnished or available for regular use of the insured or a family member are not uninsured motor vehicles for purposes of UM/UIM coverage.
 {¶ 17} Additionally, the plain language of the R.C.3937.18(A)(1) does not support Appellant's premise that because UM/UIM coverage may be precluded if a vehicle is not
specifically identified, that UM/UIM coverage may not beprecluded if a vehicle is specifically identified. In order to reach the conclusion which Appellant proposes, this Court must read into the statute the inverse of that which the statute clearly states. Appellant has not provided any case law or statutory authority to support this proposition, and in the absence of such authority, we are constrained to adhere to the plain meaning of the statute. It is clear to this Court that R.C.3937.18(I) does not provide that UM/UIM coverage is mandatory if a vehicle is specifically identified in the policy.
 {¶ 18} Second, Appellant's interpretation of the legislative intent underlying R.C. 3937.18 is not accurate. Appellant has posited that the legislature intended "to declare that if a vehicle is specifically identified in the automobile policy and the insured pays a premium for the coverage, the insurance company can not avoid its contractual obligations by precluding coverage elsewhere." In essence, Appellant has sought this Court to interpret R.C. 3937.18 to impose mandatory UM/UIM coverage if a vehicle is identified in the automobile policy. Such an interpretation is in direct conflict with the legislative intent clearly evidenced by Senate Bill 97. Senate Bill 97, effective October 31, 2001 amended R.C. 3937.18 and states, in relevant part:
"In enacting this act, it is the intent of the General Assembly to do all of the following:
" * * *
"(B) Express the public policy of the state to:
"(1) Eliminate any requirement of the mandatory offer of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages;
"(2) Eliminate the possibility of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages being implied as a matter of law in any insurance policy;
"(3) Provide statutory authority for the inclusion of exclusionary or limiting provisions in uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages[.]" 2001 S 97 at § 3.
 {¶ 19} Section 3 of Senate Bill 97 clearly demonstrates that it was the intent of the legislature to: (1) eliminate the requirement of mandatory UM/UIM coverage; (2) eliminate UM/UIM coverage being implied as a matter of law in any insurance policy; and (3) to provide statutory authority for including exclusions or other limitations in UM/UIM coverage should it be offered by the insurer. This stated intent is consistent with the plain language of the statute as amended. In fact, numerous sections of R.C. 3937.18, not just (I)(1), allow the insurer to include terms and provisions. See R.C. 3937.18(F); (G); (H). Further, we find it illustrative that Appellant has failed to indicate where in the legislative history for R.C. 3937.18 her position is supported.
 {¶ 20} This Court concludes that, post Senate Bill 97, insurance companies and their customers are free to contract in any manner that they see fit. Insurers are not required by law to offer UM/UIM coverage. However, if insurers opt to offer UM/UIM coverage, they are free to include exclusions or limitations on that coverage.
 {¶ 21} Appellant has relied on the Ohio Supreme Court's 2004 decision in Kyle v. Buckeye Union Ins. Co., 103 Ohio St.3d 170,2004-Ohio-4885 to support her contentions. Specifically, Appellant has argued that the Court summarized the legislature's intent in enacting R.C. 3937.18 in the following manner:
"For more than 30 years, this court has made clear that the purpose behind R.C. 3937.18 is to protect persons from losses that, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." Id. at ¶ 27, (Sweeney, J., dissenting) citing Abate v. Pioneer Mut. Cas. Co. (1970),22 Ohio St.2d 161, 165.
However, we find Kyle to be inapposite to the matter before us. In Kyle, the Court was asked to decide "whether former R.C.3937.18(J)(1) and (K)(2), effective September 3, 1997, through October 31, 2001, and September 21, 2000, respectively, are in conflict and, if so, whether they can be reconciled." Id. at ¶ 7. Essentially, the Court was asked to interpret the former version of R.C. 3937.18, as amended by House Bill 261, and enacted in 1997. Notably, the text quoted above which Appellant has chosen to rely upon was offered in dissent by Justice Sweeney and not in the majority opinion.
 {¶ 22} We agree with the reasoning of Snyder v. Am. FamilyIns. Co., 10th Dist. No. 05AP-116, 2005-Ohio-6751, in which the Tenth District noted that:
"The multiple changes to R.C. 3937.18 effected by S.B. 97 and S.B. 267 reveal a clear legislative intent to disengage from earlier attempts to dictate that UM coverage be offered or provided, and to dictate which limitations on coverage will or will not be enforceable. For instance, the legislature completely eliminated the requirement that UM coverage be offered with each automobile liability policy. Moreover, the General Assembly added the following language, which had never before been a part of that statute:
"Any policy of insurance that includes uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under specified circumstances, including but not limited to any of the following circumstances[.]" (Emphasis added). Id. at ¶ 21, quoting R.C. 3937.18(I).
We also agree with the Tenth District that when the legislature amended R.C. 3937.18 via Senate Bill 97, "it expressly left to the contracting parties to agree upon any `terms and conditions that preclude coverage for bodily injury or death suffered by an insured under specified circumstances.'" Id. at ¶ 22, quoting R.C. 3937.18(I).
 {¶ 23} This Court concludes that Appellant's contention that the "General Assembly, through R.C. 3937.18(I)(1), * * * made it clear that if an automobile insurance company and its insured agree to provide UM/UIM coverage to a vehicle specifically identified in the policy, for which the automobile insurance company benefits through charging premiums, that the coverage can not be otherwise excluded" is wholly unsupported by the plain language of R.C. 3937.18/(I)(1), by the legislative intent evidenced by Senate Bill 97, and by the case law as cited by Appellant.
 {¶ 24} Based on the foregoing, we find that Westfield established that no genuine issue as to any material fact remained to be litigated and that they were entitled to judgment as a matter of law. See Civ.R. 56(C). Accordingly, the trial court did not err when it granted summary judgment in favor of Westfield.
 {¶ 25} Appellant's sole assignment of error lacks merit.
 III {¶ 26} Appellant's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Boyle, J. concurs.
[1] Mr. Green made a left hand turn into oncoming traffic.