United Telephone Credit Union, Appellant, *v.* Roberts,
Acting Deputy Supt., et al., Appellees.

[Cite as *United Tel. Credit Union v. Roberts,*
115 Ohio St.3d 464, 2007-Ohio-5247.]

(No. 2006–1174—Submitted May 24, 2007—Decided October 10, 2007.)

MOYER, C.J.

{¶ 1} In this appeal, we are asked to determine whether in challenging an order appointing a conservator pursuant to R.C. 1733.361(A)(2), a credit union must act through its board of directors or whether an individual member, director, or former director may bring the action. Additionally, we are asked to determine whether the saving statute R.C. 2305.19 applies to actions filed under R.C. 1733.361(A)(2).

A

{¶ 2} Appellant, United Telephone Credit Union, is an Ohio-chartered financial institution. The credit union is regulated by the Ohio Department of Commerce, Division of Financial Institutions ("the agency"). Appellee Kenneth Roberts served as the acting deputy superintendent for credit unions within the agency.

{¶ 3} After an investigation into the credit union revealed some questionable practices, Roberts appointed appellee American Mutual Share Insurance Corporation as conservator of the credit union on February 24, 2003. On February 27, 2003, within the 30–day time limit established in R.C. 1733.361(A)(2), the credit

union filed an action contesting the appointment of American Mutual as conservator.[1] The credit union voluntarily dismissed that action in May 2003.

{¶ 4} Shortly thereafter, the agency issued a notice of intent to remove one of the credit union's directors, Natalie Hughes. *Hughes v. Ohio Dept. of Commerce,* 114 Ohio St.3d 47, 2007-Ohio-2877, 868 N.E.2d 246, ¶ 2. Hughes appealed the agency decision in the trial court and the Tenth District Court of Appeals, and we eventually accepted discretionary jurisdiction over the case. Id. at ¶ 3-7. We recently determined that neither Hughes nor the agency had complied with the procedures in R.C. 119.09 et seq. for appealing an agency decision and dismissed the action. Id. at ¶ 53.

{¶ 5} In May 2004, Hughes authorized her attorney to file another complaint contesting the conservatorship, again in the name of the credit union. The trial court found that the saving statute R.C. 2305.19 applied to the action and that Hughes, as a single director, had the authority to bring the action contesting the conservatorship. The trial court ruled that the order establishing the conservatorship was invalid. Roberts and American Mutual appealed, and the court of appeals reversed the trial court, holding that as a member or a single director, Hughes did not have authority to refile the lawsuit. We accepted the credit union's discretionary appeal to determine whether an action challenging a conservatorship may be initiated by a single director or former director, and whether the saving statute applies to such an action.

## B

{¶ 6} R.C. 1733.361(A)(2) states: "Within thirty days after the date of the order of appointment of a conservator, *the credit union* may commence a civil action in the court of common pleas of Franklin county to obtain an order compelling the superintendent to remove the conservator." (Emphasis added.) The statute clearly requires that the credit union initiate the action. " 'Credit union' means a corporation organized and qualified as such under this chapter." R.C. 1733.01(A).

{¶ 7} A credit union, as a corporation, acts through its board of directors. "[T]he corporate powers of a credit union shall be exercised * * * by a board of directors, provided that the number of directors fixed by the articles or regulations shall not be less than five." R.C. 1733.15(A). R.C. 1733.17 requires, with certain exceptions, that a majority of the board be present before any action may be taken and that a majority of the present members vote in favor of the action before the board may act. Of a five-member board, three must be present to

---

1. There is some dispute as to whether a majority of the board approved the filing of the suit. However, because it is not dispositive for our resolution of this case, we will assume that a quorum of the directors of the credit union did approve of the original action filed on February 27, 2003.

constitute a quorum, and at least two must agree on an action before the board may undertake it. The plain statutory language of R.C. 1733.15 and 1733.17 requires action by the board of directors before the credit union acts, unless the action is otherwise permitted by law or the articles or regulations of the credit union. There is no provision for a single director, former director, officer, or member to act on behalf of the credit union under these circumstances.

{¶ 8} The credit union points to two separate subsections of R.C. 1733.361 to suggest that a single director may contest the appointment of a conservator. First, the credit union argues that because R.C. 1733.361(A)(3) allows that "[t]he credit union may consent to the appointment of a conservator by resolution of the majority of the board of directors of record on the date of the order of appointment," it must also be true that a majority of the board of directors of record on the date of the order may contest the appointment of a conservatorship. There is no authority for the proposition that a statute that expressly grants the power to do a particular thing implicitly grants the power to do the opposite. See *Green v. Westfield Natl. Ins. Co.*, 9th Dist. No. 06CA0025–M, 2006-Ohio-5057, ¶ 17.

{¶ 9} Additionally, the plain language of R.C. 1733.17 lists only two other circumstances in which a board may act with less than its full quorum: "Except for regulations applicable during an emergency, as that term is defined in section 1733.01 of the Revised Code, and except that the articles or regulations may require a greater number, a majority of the entire authorized number of directors is necessary to constitute a quorum for a meeting of directors except that a majority of the directors in office constitute a quorum for filling a vacancy on the board." Fewer than three board members may act only in the event of an emergency, to fill a vacancy, or to consent to the appointment of a conservator. We will not read into a statute any further exceptions to the general rule not expressly provided for by the General Assembly. *United Transp. Union Ins. Assn. v. Tracy* (1998), 82 Ohio St.3d 333, 338, 695 N.E.2d 770 (Lundberg Stratton, J., dissenting).

{¶ 10} Second, the credit union points to R.C. 1733.361(B)(2) to suggest that the power of the board resides in the conservator and therefore an individual former director, officer, or member of the credit union may challenge the conservatorship. "The conservator * * * [s]hall have and exercise, in the name and on behalf of the credit union, all the rights, powers, and authority of the officers, directors, and members of the credit union * * *." R.C. 1733.361(B)(2). The credit union argues that once a conservator is appointed, the credit union is no longer empowered to act through its board of directors. Therefore, the authority to challenge the appointment cannot be restricted to that body. This argument ignores the plain language of subsection (A)(2) requiring "the credit

union" to bring the action. The conservator would never act itself, through its control of the board, to challenge its own appointment. That reading would render subsection (A)(2) superfluous. "We must construe the applicable statute and rule to avoid such unreasonable or absurd results." *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 28. In order to read the statute in a manner that gives effect to the intent of the General Assembly and does not lead to an absurd result (such as the conservator having the sole power to challenge its own appointment), the phrase "the credit union" in subsection (A)(2) must refer to the board as it is configured during the 30–day statutory time. This allows a majority of the board to convene within 30 days and vote to challenge the conservatorship while all other powers of the credit union lie with the conservator.

## C

{¶ 11} The credit union argues that this line of reasoning deprives it of procedural due process.

{¶ 12} "The Fourteenth Amendment protects only against deprivations 'without due process of law.' *Baker v. McCollan* (1979), 443 U.S. 137, 145 [99 S.Ct. 2689, 61 L.Ed.2d 433]. The United States Supreme Court has held that no due process violation occurs when the state provides an adequate post-deprivation remedy for a loss of property caused by the negligence of state officials." *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456. We continued, and observed that in *Hudson v. Palmer* (1984), 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393, the United States Supreme Court held that " 'an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy is available.' " Id. at 34–35, 550 N.E.2d 456. The credit union argues that by limiting its right to challenge the appointment of a conservator to authorization by a quorum of a fully constituted board of directors, the statute deprives the credit union of a meaningful remedy.

{¶ 13} The fundamental requirement of due process is the opportunity to be heard. *Armstrong v. Manzo* (1965), 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62; *Ohio Assn. of Pub. School Emp., AFSCME, AFL–CIO v. Lakewood City School Dist. Bd. of Edn.* (1994), 68 Ohio St.3d 175, 176, 624 N.E.2d 1043 ("Before the state may deprive a person of a property interest, it must provide procedural due process consisting of notice and a meaningful opportunity to be heard"). R.C. 1733.361(A)(2) allows the credit union to be heard, if it files suit in Franklin County Court of Common Pleas within 30 days. The credit union argues that because it lacked a fully constituted board, either Hughes should be allowed to

bring suit on behalf of the credit union or the statute as applied violates due process. Neither of these propositions is correct.

{¶ 14} It is unclear from the record exactly how many board members remained in February and March 2003. However, R.C. 1733.17 required that only three directors of the credit union needed to be present in order to vote to challenge the conservatorship. Additionally, the statute allows for a quorum to consist of a majority of the board members in office for the purpose of filling a vacancy on the board. R.C. 1733.18(D) provides the board of directors with the authority to appoint a replacement to complete the unexpired term of a director who has resigned or been removed. R.C. 1733.12 and 1733.18 provide mechanisms for reconstituting a depleted board. No requirement in the statutory scheme prevented the credit union from being heard. The credit union had adequate notice and an available remedy to be heard in the court of common pleas. This is all that due process requires. *Ohio Assn. of Pub. School Emp.*, 68 Ohio St.3d at 180, 624 N.E.2d 1043 ("Due process does not incorporate the entire arsenal of express constitutional protections that might apply in other situations"). That the credit union failed to avail itself of the available statutory remedy does not violate due process.

D

{¶ 15} While we have determined that only a quorum of the full board may initiate a challenge to a conservatorship and that, as a single director, former director, or member, Hughes lacked authority to do so in May 2004, we take this opportunity to address Roberts's proposition of law that the saving statute (R.C. 2305.19) does not apply to this action.

{¶ 16} Former R.C. 2305.19 stated: "In an action commenced, * * * if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal or failure has expired, the plaintiff * * * may commence a new action within one year after such date." 1953 H.B. No. 1.

{¶ 17} We have applied this language to a variety of actions. In *Reese v. Ohio State Univ. Hosps.* (1983), 6 Ohio St.3d 162, 6 OBR 221, 451 N.E.2d 1196, we determined that the saving statute applied to actions filed against the state in the Court of Claims. In *Lewis v. Connor* (1985), 21 Ohio St.3d 1, 21 OBR 266, 487 N.E.2d 285, we held that the saving statute applied to workers' compensation appeals filed in the common pleas court. And in *Osborne v. AK Steel/Armco Steel Co.*, 96 Ohio St.3d 368, 2002-Ohio-4846, 775 N.E.2d 483, we held that the saving statute applied to statutory age-discrimination claims.

{¶ 18} However, the case before us is much more factually similar to *Allen v. McBride*, 105 Ohio St.3d 21, 2004-Ohio-7112, 821 N.E.2d 1001. In *Allen*, we were

asked to determine whether the saving statute applied to will-contest claims. The administration of an estate continues even after the will contest is dismissed. This is very similar to the case at bar, in which the conservatorship of the credit union continued despite the filing and subsequent dismissal of the challenge.

{¶ 19} While we ultimately determined that the saving statute did apply to will contests, we framed and resolved the issue as follows: " 'The issue before us [reduces] to whether application of the savings statute so adversely affects the administration of the estate that the legislature could not have intended to apply the savings statute to will contest actions. In the final analysis, the adverse effects are no greater than those inherent in the administration of an estate in the absence of the savings statute, and thus we conclude the savings statute applies to plaintiff's dismissal of her will contest action.' " Id. at ¶ 21, quoting the court of appeals in that case, Franklin App. No. 03AP–432, 2003-Ohio-7158, 2003 WL 23024508, ¶ 23.

{¶ 20} While both a will-contest claim and a challenge to a conservatorship affect an ongoing interest (the administration of the estate and the conservatorship) and while both have a very short statute of limitations (four months, at the time [will-contest action] and 30 days [conservatorship challenge]), we believe that the application of the above analysis to R.C. 1733.361 leads to a different result.

{¶ 21} The General Assembly has made it clear that conservatorship challenges need to be resolved quickly and efficiently. "The court shall give the [conservatorship challenge] calendar priority over other civil business before the court and expeditiously proceed and make a determination on it. The Rules of Civil Procedure apply to the action except that the copy of the complaint and summons shall be served by the sheriff of Franklin county on the superintendent and shall be returnable within five days after the date of service, whereupon the allegations of the complaint are deemed to stand denied without necessity of filing an answer under Civil Rule 12." R.C. 1733.361(A)(2). The General Assembly has provided for a very short statute of limitations and required that the case be given priority over other matters, that the copy of process be returned in five days after service, and that the allegations be deemed to be denied to accelerate the process.

{¶ 22} To allow a credit union to voluntarily dismiss and refile its claim one year later would undermine the purpose of the statute. The General Assembly purposely created a procedure for rapid resolution of the challenge to the appointment of a conservator; allowing the challenge to lie dormant only to be resurrected a year later would undermine that purpose.

{¶ 23} Credit union members, creditors, debtors, lienholders, and others need to know who is ultimately in control of the credit union. The application of the saving statute would be detrimental to that requirement.

E

{¶ 24} We hold that in an action challenging an appointment of a conservator pursuant to R.C. 1733.361(A)(2), a credit union must act through its board of directors; an individual member, director, or former director may not file the action on behalf of the credit union. This holding does not violate the due process guarantee, because R.C. 1733.361 provides a board of directors an adequate and meaningful remedy to challenge the appointment of a conservator.

{¶ 25} The saving statute R.C. 2305.19 does not apply to actions brought under R.C. 1733.361, because its application would adversely affect the administration of the conservatorship.

Judgment affirmed.

LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., concurs in judgment only.

PFEIFER and O'CONNOR, JJ., dissent.

_____

PFEIFER, J., dissenting.

{¶ 26} According to the majority opinion, a credit union can act only through its board of directors. See R.C. 1733.15(A).

{¶ 27} According to R.C. 1733.361(B)(2), the appointed conservator of a credit union "[s]hall have and exercise * * * all the rights, powers, and authority of the officers, directors, and members of the credit union."

{¶ 28} According to R.C. 1733.361(A)(2), a credit union can commence an action to remove a conservator within 30 days of the conservator's appointment.

{¶ 29} Only the credit union can challenge the appointment of a conservator, only the board of directors can act on behalf of the credit union, and upon appointment, the conservator has all of the powers of the board of directors. Who is left to challenge the appointment of a conservator? The obvious answer is that only the conservator can challenge the appointment of the conservator, something the majority opinion rightly states would never happen.

{¶ 30} How then to harmonize these statutory provisions? The majority opinion states that "credit union" as used in R.C. 1733.361(A)(2) must mean "the board as it is configured during the 30-day statutory time"—what a strange notion! Surely the General Assembly would not have granted conservators *all* of the powers of a board of directors if it intended the board of directors to continue to function in any capacity. And if the legislators had so intended, surely they would have made their intent clear.

{¶ 31} The majority opinion implicitly suggests that Natalie Hughes, if she was the only director at the time the conservator was appointed, should have appointed other directors and that that newly constituted board should have challenged the appointment of the conservator. Again, how strange it is that without saying so, the General Assembly would authorize a single-person board of directors, whose powers have otherwise been subsumed into a conservatorship, to appoint new members to the board of directors.

{¶ 32} It is more likely, and a less strained reading of the statutes, that the General Assembly intended "credit union," as used in R.C. 1733.361(A)(2), to refer generically to the credit union and not solely to a board of directors rendered impotent by the appointment of a conservator. It is clear that someone must be able to challenge the appointment of the conservator—otherwise the General Assembly would not have authorized such a challenge.

{¶ 33} The trial court was in a better position than this court to determine whether any particular person or entity should be able to challenge the appointment of the conservator. The trial court determined that Natalie Hughes, the only director at the time the conservator was appointed, was an appropriate person to challenge the appointment of the conservator. I see nothing in the record or briefs that convinces me that the trial court abused its discretion.

{¶ 34} The majority opinion concludes that R.C. 2305.19 does not apply to save this action as one previously dismissed other than on the merits. But see *DeHart v. Aetna Life Ins. Co.* (1982), 69 Ohio St.2d 189, 192, 23 O.O.3d 210, 431 N.E.2d 644 ("it is a fundamental tenet of judicial review in Ohio that courts should decide cases on the merits. * * * Judicial discretion must be carefully—and cautiously—exercised before this court will uphold an outright dismissal of a case on purely procedural grounds"). There are several unusual things about the majority opinion's conclusion that the saving statute does not apply: (1) the majority opinion cites three cases in which the saving statute was applied to allow a suit to continue, (2) the majority opinion cites zero cases in which the saving statute did not allow a suit to continue, (3) the case that is "factually similar" to the case before us, and therefore of special significance as the sole support for denying the application of R.C. 2305.19 in this instance, concluded that the saving statute did apply, and (4) the facts of this case meet all the requirements of R.C. 2305.19. Lacking any support and in the face of clear evidence to the contrary, the majority opinion somehow concludes that the saving statute doesn't apply.

{¶ 35} I would hold that the trial court did not abuse its discretion when it concluded that Natalie Hughes, the sole director at the time of the refiling of the action, was an appropriate person to refile the R.C. 1733.361(A)(2) challenge. I would hold that the saving statute applies. I dissent.

O'CONNOR, J., concurs in the foregoing opinion.

Jones Day and Fordham E. Huffman; and Sidley Austin, L.L.P., Scott Mendeloff, and Gabriel Aizenberg, for appellant.

Marc Dann, Attorney General, William P. Marshall, Solicitor General, Stephen P. Carney and Elise Porter, Deputy Solicitors, Peggy W. Corn, Assistant Solicitor, and Randall W. Knutti, Assistant Attorney General; and Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford, John C. Hartranft, Polly J. Harris, David S. Bloomfield Jr., and Julie L. Atchison, for appellee Kenneth A. Roberts.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., Orla E. Collier III, and John F. Stock, for appellee American Mutual Share Insurance Corporation.