[Cite as *Berry v. Mullet*, 2025-Ohio-2346.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PATRICIA J. BERRY, ET AL. | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiffs-Appellants | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. Kevin W. Popham, J. |
| -vs- | : | |
| | : | Case No. 24CA019 |
| TYLER A. MULLET, ET AL. | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 23CV012

JUDGMENT:      Reversed and Remanded

DATE OF JUDGMENT:      July 1, 2025

APPEARANCES:

For Plaintiffs-Appellants

THOMAS J. INTILI
2300 Far Hills Avenue
Dayton, OH  45419-1550

For Defendants-Appellees

MATTHEW P. MULLEN
405 Chauncey Avenue, NW
New Philadelphia, OH  44663

JAMES C. WRIGHT
32255 Northwestern Highway
Suite 225
Farmington Hills, MI  48334

CRAIG G. PELINI
8040 Cleveland Avenue, NW
Suite 400
North Canton, OH  44720

MARK R. CHILSON
10619 Falls Creek Lane
Dayton, OH  45458

*King, J.*

{¶ 1}   Plaintiffs-Appellants, Patricia and Craig Berry, appeal several judgment and journal entries of the Court of Common Pleas of Holmes County, Ohio.  Defendants-Appellees are Tyler Mullet and Home-Owners Insurance Company.  An additional Defendant is Michigan Conference of Teamsters Welfare Fund ("MCTWF").  We reverse the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On June 7, 2014, Mullet failed to stop at a stop sign at an intersection and collided with a vehicle operated by the Berrys.  The accident occurred in Holmes County, Ohio, and the Berrys reside in Sterling, Michigan; Mullet is an Ohio resident.  Patricia Berry was severely injured and was care-flighted to Akron General Hospital; she underwent several surgical procedures and is still receiving treatment to this day.

{¶ 3}   At the time of the accident, the Berrys were insured under a no-fault automobile policy issued by Home-Owners, a Michigan-based corporation.  The policy contains a type of coverage known as personal injury protection ("PIP").  A PIP provision potentially entitles an insured to lifetime medical payments coverage for injuries sustained in an accident.  Mullet was insured by State Farm.  Because Patricia Berry's injuries exceeded the liability limits of Mullet's policy, Mullet is an underinsured motorist under the terms of the Berrys' Home-Owners policy.

{¶ 4}   On June 3, 2016, the Berrys filed a complaint against Mullet for negligence and against Home-Owners for underinsured motorist benefits (Case No. 2016CV048).  On March 14, 2018, the Berrys filed an amended complaint to add claims against Home-Owners for insurance bad faith and wrongful termination of PIP benefits.  The Berrys

alleged Home-Owners failed, refused, or unreasonably delayed paying them underinsured motorist benefits. On February 14, 2022, the Berrys voluntarily dismissed their complaint without prejudice ("*Mullet I*").

{¶ 5} On February 10, 2023, the Berrys refiled their complaint against Mullet and Home-Owners asserting the same claims. The Berrys also added MCTWF as a nominal defendant and subrogee, alleging MCTWF paid medical providers for accident-related claims that Home-Owners was obligated to pay (over $95,000) under a Blue Cross Blue Shield health insurance policy managed by MCTWF. MCTWF is a self-funded trust, governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), that provides health insurance to Teamster beneficiaries, including the Berrys.

{¶ 6} On March 22, 2023, Home-Owners filed an answer and cross-claim against Mullet for subrogation, indemnity, contribution and reimbursement.

{¶ 7} On June 14, 2023, MCTWF filed an answer and cross-claim against Home-Owners for reimbursement of payments made for Patricia Berry's medical treatment. The Berrys and MCTWF sought a declaration as to who was the primary payor for Patricia Berry's medical expenses.

{¶ 8} On July 7, 2023, Home-Owners filed a motion for partial summary judgment, claiming under Michigan law, MCL 500.3145(1), the Berrys and MCTWF were precluded from seeking reimbursement for accident-related medical expenses incurred before February 10, 2022. Home-Owners alternatively argued at a minimum, the Berrys and MCTWF were precluded from seeking reimbursement for accident-related medical expenses incurred before June 16, 2021, by operation of MCL 500.3145(1) in tandem with Ohio's borrowing statute, R.C. 2305.03, effective June 16, 2021.

{¶ 9} The Berrys and MCTWF opposed the motion, arguing because the accident occurred in Ohio and their claims accrued in Ohio, Ohio's borrowing statute does not borrow the statute of limitations from Michigan as to their negligence claims against Mullet and to any reimbursement payments made to Ohio entities such as the Cleveland Clinic in this case. They argued all those claims are subject to Ohio's six-year statute of limitations.

{¶ 10} By judgment entry filed October 11, 2023, the trial court granted the motion, relying on MCL 500.3145(1) and R.C. 2305.03, and Michigan case law. The trial court found the Berrys could not recover any PIP claims against Home-Owners prior to June 16, 2021.

{¶ 11} On October 20, 2023, Mullet filed a motion for partial summary judgment consistent with the trial court's October 11, 2023 judgment entry. By judgment entry filed December 19, 2023, the trial court granted the motion.

{¶ 12} On March 5, 2024, the Berrys filed a motion to extend the discovery cutoff date by sixty days to April 30, 2024, to obtain limited discovery. A jury trial was scheduled for June 24, 2024. By journal entry filed March 8, 2024, the trial court denied the motion.

{¶ 13} On March 11, 2024, the Berrys learned their medical expert, M. P. Patel, M.D., had died in June 2021. The next day, the Berrys filed a motion for leave to substitute their medical expert with Aarti Singla, M.D., a physician of the same medical specialty. Dr. Patel had issued a report on June 17, 2020, which the Berrys produced in *Mullet I*. Dr. Singla issued her independent report on April 16, 2024, which was shared with defense counsel.

{¶ 14} On March 12, 2024, Home-Owners filed a motion to dismiss for violation of court order and failure to permit discovery. Home-Owners sought production of documents that had been ordered under a previous judgment entry. On March 21, 2024, Home-Owners filed an amended proof of service on its motion to dismiss.

{¶ 15} On March 21, 2024, the Berrys filed motions to strike from the record fourteen filings by Home-Owners as well as the motion to dismiss because the proofs of service were signed by a paralegal instead of the attorney of record. By journal entries filed March 22, 2024, the trial court denied the motions, finding no parties had been prejudiced by Home-Owners omissions regarding the certificates of service. In separate journal entries filed March 22, 2024, the trial court granted Home-Owners's motion to dismiss if the Berrys did not produce the requested documents by April 5, 2024, and denied the Berrys' motion to substitute medical expert.

{¶ 16} On March 25, 2024, the Berrys filed a motion to vacate the July 7, 2023 motion for partial summary judgment due to the motion having a defective proof of service. By journal entry filed April 25, 2024, the trial court denied the motion.

{¶ 17} On March 29, 2024, Home-Owners filed three separate motions for partial summary judgment: one on the Berrys' bad faith claim (arguing Michigan law applies); one based on the coordination of coverage (arguing under the no-fault insurance policy, Patricia Berry's health insurance provider was the primary payor); and one on its material misrepresentation claim (arguing Michigan law applies and Patricia Berry's misrepresentations of material facts and information regarding her abilities after the accident barred her claims for no-fault benefits).

{¶ 18} On April 12, 26, and 29, 2024, the Berrys filed memorandums in opposition, arguing their tort claim for insurance bad faith is governed by Ohio law under Ohio's choice of law rules; the PIP coordination of benefits provision in the Home-Owners policy is preempted by ERISA and MCTWF's coordination of benefits provision; and genuine issues of material fact existed as to the alleged material misrepresentations. MCTWF joined in the April 26, 2024 memorandum in opposition.

{¶ 19} On May 2, 2024, Mullet filed separate motions for summary judgment against the Berrys and MCTWF.

{¶ 20} By journal entry filed May 16, 2024, the trial court granted all three motions filed by Home-Owners, and dismissed all claims by the Berrys and MCTWF against Home-Owners. As to the bad faith claim, the trial court found Michigan law applied under the Restatement of Conflict of Laws § 145(2)(b), (c), and (d); Home-Owners's decisions to approve or deny coverage occurred in Michigan, the parties reside and/or are incorporated in Michigan, and there is no basis in Michigan law to sustain an independent tort action for bad faith. As to the coordination of benefits, the trial court found the Berrys and MCTWF failed to present sufficient evidence to refute Home-Owners's claim for coordination of benefits under MCL 550.3109(a) and Michigan common law. As to the material misrepresentation claim, the trial court found sufficient evidence of Patricia Berry's misrepresentations regarding her abilities after the accident and those misrepresentations were material, and therefore her claims are barred by the terms of the Home-Owners's policy and MCL 500.4503. The trial court further found the Berrys did not timely name a medical expert in support of their claims.

{¶ 21} On May 22, 2024, Mullet withdrew his motion for summary judgment against MCTWF as MCTWF had not filed a cross-claim against him. By journal entry filed June 6, 2024, the trial court granted Mullet's summary judgment motion against the Berrys, finding the Berrys conceded to not having a factual or legal defense to the motion without an expert medical witness.

{¶ 22} On June 10, 2024, Home-Owners voluntarily dismissed their cross-claim against Mullet.

{¶ 23} On June 28, 2024, Home-Owners filed a motion for attorney fees with an exhibit showing a detailed breakdown of fees. By journal entry filed September 17, 2024, the trial court denied the motion. The trial court noted all claims and cross-claims were fully adjudicated and the matter was a final appealable order.

{¶ 24} The Berrys filed an appeal with the following assignments of error:[1]

I

{¶ 25} "THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT HOME-OWNERS INSURANCE COMPANY'S JULY 7, 2023 MOTION FOR PARTIAL SUMMARY JUDGMENT."

II

{¶ 26} "THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFFS' MARCH 5, 2024 MOTION FOR EXTENSION OF THE DISCOVERY CUTOFF."

---

[1]We note MCTWF also filed an appeal, Case No. 24CA018, which is a companion case and will be referred to in this appeal.

III

{¶ 27} "THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFFS' MARCH 11, 2024 MOTION TO SUBSTITUTE EXPERT WITNESS."

IV

{¶ 28} "THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFFS' MARCH 21, 2024 MOTION TO STRIKE FROM THE RECORD DEFENDANT HOME-OWNERS INSURANCE COMPANY'S COURT FILINGS NOT SERVED IN ACCORDANCE WITH CIVIL RULES 5 AND 11."

V

{¶ 29} "THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFFS' MARCH 20, 2024 MOTION TO STRIKE FROM THE RECORD DEFENDANT HOME-OWNERS INSURANCE COMPANY'S MARCH 11, 2024 MOTION TO DISMISS FOR VIOLATION OF COURT ORDER AND FAILURE TO PERMIT DISCOVERY."

VI

{¶ 30} "THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF'S MARCH 25, 2024 MOTION TO VACATE THE OCTOBER 11, 2023 ORDER AND ENTRY GRANTING DEFENDANT HOME-OWNERS INSURANCE COMPANY'S JULY 7, 2023 MOTION FOR PARTIAL SUMMARY JUDGMENT."

VII

{¶ 31} "THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT FOR DEFENDANT HOME-OWNERS INSURANCE COMPANY ON MAY 16, 2024."

VIII

{¶ 32} "THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT FOR DEFENDANT TYLER MULLET ON JUNE 6, 2024."

{¶ 33} We will address the Berrys' assignments of error out of order for ease of discussion.

IV, V, VI

{¶ 34} In their fourth assignment of error, the Berrys claim the trial court erred in denying their motion to strike from the record Home-Owners's court filings not served in accordance with Civ.R. 5 and 11.

{¶ 35} In their fifth assignment of error, the Berrys claim the trial court erred in denying their motion to strike from the record Home-Owners's motion to dismiss because the motion had the same defective proof of service.

{¶ 36} In their sixth assignment of error, the Berrys claim the trial court erred in denying their motion to vacate the trial court's October 11, 2023 judgment entry granting Home-Owners's motion for partial summary judgment because the motion had the same defective proof of service.

{¶ 37} We disagree with all three assignments of error.

{¶ 38} Whether to strike filings from the record rests in a trial court's sound discretion. *State ex rel. Fant v. Sykes*, 29 Ohio St.3d 65 (1987). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Enterprises, Inc. v. River Place Community Urban*

*Redevelopment Corp.,* 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 39} Civ.R. 5 governs service and filing of pleadings and other papers subsequent to the original complaint. Subsection (B)(4) states:

> (4) *Proof of Service.* The served document shall be accompanied by a completed proof of service which shall state the date and manner of service, specifically identify the division of Civ.R. 5(B)(2) by which the service was made, and be signed in accordance with Civ.R. 11. Documents filed with the court shall not be considered until proof of service is endorsed thereon or separately filed.

{¶ 40} Civ.R. 11 governs signing of pleadings, motions, or other documents and states in part:

> Every pleading, motion, or other document of a party represented by an attorney shall be signed, by electronic signature or by hand, by at least one attorney of record in the attorney's individual name, whose address, attorney registration number, telephone number, facsimile number, if any, and business e-mail address, if any, shall be stated. . . . The signature of

an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted.

*March 21, 2024 Motions*

{¶ 41} On March 21, 2024, the Berrys filed two motions, one to strike from the record fourteen filings by Home-Owners because the proofs of service were signed by a paralegal instead of the attorney of record in violation of the civil rules, and one to strike the motion to dismiss for the same reason. The Berrys argued the filings were defective and should be stricken as sham and false under Civ.R. 11. They did not allege the filings were signed with the intent to defeat the purpose of the rule or were signed willfully or they were prejudiced by the incorrect proofs of service.

{¶ 42} Without waiting for a response from Home-Owners, the trial court denied the motions, finding the Berrys did not allege that they did not timely receive the listed filings, but simply argued they were defective under the civil rules. Journal Entries filed

March 22, 2024. The trial court found, "[n]o parties have been prejudiced by Home-Owners omissions regarding the certificate of service on any of the identified pleadings." *Id.*

*March 25, 2024 Motion*

{¶ 43} On March 25, 2024, the Berrys filed a motion to vacate the trial court's October 11, 2023 judgment entry granting Home-Owners's motion for partial summary judgment because the motion had a defective proof of service. Again, they did not allege the filing was signed with the intent to defeat the purpose of the rule or was signed willfully or they were prejudiced by the incorrect proof of service. They argued Civ.R. 5(B)(4) is not a mere guideline and is a mandate that "[d]ocuments filed with the court shall not be considered until proof of service is endorsed thereon or separately filed."

{¶ 44} By journal entry filed April 25, 2024, the trial court denied the motion, finding it "does not find Plaintiffs' Motion well-taken."

{¶ 45} All of the complained of filings contained a proof of service so they were in compliance with Civ.R. 5, they were just done incorrectly under Civ.R. 11 because they were signed by a paralegal as opposed to an attorney of record. Without any allegations of an intent to defeat the purpose of the rule or willful action and without any evidence of prejudice, we cannot say the trial court abused its discretion in denying the motions based on defective proofs of service.

{¶ 46} Assignments of Error IV, V, and VI are denied.

III

{¶ 47} In their third assignment of error, the Berrys claim the trial court erred in denying their motion to substitute their expert medical witness. We agree.

{¶ 48} Whether to permit a substitution of a medical witness rests in a trial court's sound discretion. *Miles v. Cleveland Clinic Health System-East Region*, 2023-Ohio-2582, ¶ 23 (8th Dist.).

{¶ 49} On March 11, 2024, as the Berrys were preparing for trial, they learned their medical expert, M. P. Patel, M.D., had died in June 2021. The next day, the Berrys filed a motion for leave to substitute their medical expert with Aarti Singla, M.D., a physician of the same medical specialty. Dr. Patel had issued a report on June 17, 2020, which the Berrys produced in *Mullet I*. Dr. Singla issued her independent report on April 16, 2024, which was shared with defense counsel. The report was also attached to the Berrys' April 29, 2024 memorandum in opposition to Home-Owners's motion for partial summary judgment on material misrepresentation. The deadline for identifying expert witnesses was November 30, 2023, with a trial set for June 24, 2024. The Berrys requested a modification of the pretrial scheduling order for good cause shown under Civ.R. 16(B)(4), which in this instance, was the discovery of the death of their medical expert.

{¶ 50} In response, Mullet did not object to the substitution, but Home-Owners did. Home-Owners argued pursuant to the Civ.R. 26(F) Conference Report and Proposed Joint Discovery Plan, all parties agreed to disclose their respective experts by November 30, 2023, and the Berrys failed to do so. March 15, 2024 Response in Opposition at 1. Home-Owners argued the fact that the Berrys "complied" with the deadline by providing the report in *Mullet I* is of no consequence because the current lawsuit was filed on February 22, 2023, and they should have complied with the plan "for the lawsuit at hand, not prior lawsuits." *Id.* Home-Owners noted the Berrys did not name Dr. Patel in their initial disclosures served on April 18, 2023, in the second lawsuit. *Id.* at 1-2. Home-

Owners argued it had diligently conducted discovery and timely disclosed their experts and it "should not be hindered by Plaintiffs' neglect to do so." *Id.* at 2. Home-Owners did not explain how it would be hindered or if it would suffer prejudice if the substitution was permitted.

{¶ 51} By journal entry filed March 22, 2024, the trial court denied the motion, stating: "The Court does note that Plaintiffs' expert, Dr. Patel, died in June of 2021. Plaintiffs' now ask to substitute a new expert just a few months shy of 3 years after Dr. Patel's death and 4 months after the deadline to disclose experts in this case." The trial court did not make any findings relative to prejudice to Home-Owners or a burden to the court's schedule.

{¶ 52} Interestingly, the argument advanced by Home-Owners was that the Berrys failed to comply with the discovery plan, just as it had failed to comply with a civil rule regarding the proofs of service; Home-Owners wanted the trial court to look the other way on its violations, but hold the Berrys to the rules of the discovery plan. Granted, a late discovery disclosure could potentially cause a schedule change and/or prejudice, but no arguments were raised on these issues.

{¶ 53} Civ.R. 26(B)(7) governs disclosure of expert testimony. Subsection (c) states: "Unless good cause is shown, all reports and, if applicable, supplemental reports must be supplied no later than thirty (30) days prior to trial." Dr. Singla issued her independent report on April 16, 2024, which was more than sixty days prior to the trial scheduled for June 24, 2024.

{¶ 54} We acknowledge the trial court has discretion in permitting the substitution after the deadline. But we also acknowledge "it is a fundamental tenet of judicial review

in Ohio that courts should decide cases on the merits." *DeHart v. Aetna Life Insurance Co.*, 69 Ohio St.2d 189, 192 (1982). Without a medical expert, the Berrys' case fails, as they cannot prove their personal injury claims.

{¶ 55} In this case, Dr. Patel's death was not known, and the Berrys notified the trial court of the death the day after they became aware of it. They then immediately made arrangements for a new medical expert and requested substitution in a timely manner. There was no evidence of bad faith on the Berrys' part or prejudice to Home-Owners. The new report was filed over sixty days prior to trial, and Home-Owners was already aware of Patricia Berry's medical issues from Dr. Patel's June 2020 report. We find the trial court's denial of the Berrys' motion to substitute their expert medical witness due to Dr. Patel's death was unreasonable.

{¶ 56} Upon review, we find the trial court abused its discretion in denying the Berrys' motion to substitute their expert medical witness.

{¶ 57} Assignment of Error III is granted.

VII

{¶ 58} In their seventh assignment of error, the Berrys claim the trial court erred in granting partial summary judgment to Home-Owners. We agree.

{¶ 59} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Regarding summary judgment, the Supreme Court stated the following in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448 (1996):

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material

fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

{¶ 60} In *Leech v. Schumaker,* 2015-Ohio-4444, ¶ 13 (5th Dist.), this court explained the following:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the

nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 61} As an appellate court reviewing summary judgment motions, we stand in place of the trial court and review the issues de novo, under the same standards and evidence as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶ 62} The trial court granted summary judgment to Home-Owners on the claims of bad faith, coordination of coverage, and material misrepresentation.

*Material Misrepresentation*

{¶ 63} In its May 16, 2024 journal entry, the trial court found the following in part:

The Court further finds Plaintiffs argument that Plaintiff "Patricia Berry's testimony is corroborated by the report of Plaintiffs' medical expert"

Dr. Singla to be wholly unpersuasive. On March 22, 2024, this Court denied Plaintiffs' Motion to Substitute Medical Expert Witness. Therefore, Plaintiffs can have no medical expert since Plaintiffs original expert, Dr. Patel, died in 2021 well before Plaintiffs re-filed this case in 2023. Plaintiffs had more than ample time to obtain a new expert both before and after the filing date of this case. Plaintiffs are entirely responsible for their failure to procure a new medical expert and their Notice of Service of Curriculum Vitae Expert as well as the Notice of Service of Independent Medical Examination Report are ordered stricken from the record.

{¶ 64} Based upon our decision in Assignment of Error III, we find the trial court's decision on material misrepresentation to be in error.

{¶ 65} We find the trial court erred in granting partial summary judgment to Home-Owners on the issue of material misrepresentation.

*Coordination of Benefits*

{¶ 66} Based upon our analysis in the companion case, Case No. 24CA018, under Assignment of Error II, we find the trial court erred in granting partial summary judgment to Home-Owners on its coordination of benefits claim.

*Bad Faith*

{¶ 67} In light of our decision to reverse and remand this case, we find the trial court's determination that Michigan law applies and there is no basis in Michigan law to sustain an independent tort action for bad faith to be premature.

{¶ 68} Upon review, we find the trial court erred in granting partial summary judgment to Home-Owners on all three issues.

{¶ 69} Assignment of Error VII is granted.

VIII

{¶ 70} In their eighth assignment of error, the Berrys claim the trial court erred in granting summary judgment to Mullet. We agree.

{¶ 71} In its June 6, 2024 journal entry, the trial court granted summary judgment to Mullet, noting the Berrys conceded "they have no factual or legal defense" to Mullet's motion because their motion for substitution of medical expert witness had been denied. Based upon our decision in Assignment of Error III, we find the trial court erred in granting summary judgment to Mullet.

{¶ 72} Assignment of Error VIII is granted.

I

{¶ 73} In their first assignment of error, the Berrys claim the trial court erred in granting Home-Owners partial summary judgment on the issue of the statute of limitations based on Michigan law. Based upon our analysis in the companion case, Case No. 24CA018, under Assignment of Error I, we find the trial court erred in granting partial summary judgment to Home-Owners on this issue.

II

{¶ 74} In their second assignment of error, the Berrys claim the trial court erred in denying their motion for extension of the discovery cutoff date. In light of our decision to reverse and remand this case to consider the report of Dr. Singla and review the Summary

Plan Description on the coordination of benefits claim, the trial court may choose to extend the discovery cutoff date.  We find a review of this issue by this court to be premature.

{¶ 75} The judgment of the Court of Common Pleas of Holmes County, Ohio is hereby reversed, and the matter is remanded to the court for further proceedings.

By: King, P.J.

Montgomery, and

Popham, J. concur.